605 So.2d 998 (1992)
Sheila CUKER and Robert Cuker, her husband, Appellants,
v.
HILLSBOROUGH COUNTY HOSPITAL AUTHORITY d/b/a Tampa General Hospital, Appellee.
No. 91-00731.
District Court of Appeal of Florida, Second District.
October 9, 1992.
Nolan Carter of Nolan Carter, P.A., Orlando, for appellants.
Michael N. Brown of Allen, Dell, Frank & Trinkle, Tampa, for appellee.
Arnold R. Ginsberg of Perse & Ginsberg, P.A., Miami, Amicus Curiae by Academy of Florida Trial Lawyers, for appellants.
THREADGILL, Judge.
Appellants, Sheila Cuker and Robert Cuker, plaintiffs below, challenge a final judgment entered following a directed verdict in favor of Hillsborough County Hospital Authority d/b/a Tampa General Hospital in this medical malpractice action. We reverse.
The amended complaint filed by the Cukers alleged inter alia that Drs. J.K. Williams and Michael Lewis, were agents or employees, or apparent agents or employees of Tampa General, that Tampa General was negligent in the care and treatment of Mrs. Cuker in the hospital's obstetrical-gynecological (OB-GYN) unit, and that this negligence caused injuries to their child, resulting in his death fourteen months later. Although the amended complaint included claims against other defendants, the case proceeded to trial with Tampa General as the only remaining defendant.
*999 After jury selection but before any evidence had been presented, the court heard argument on a motion for equitable relief relating to evidence which had been lost or destroyed. During the course of this argument the court required the Cukers' lawyer to "convince me that an OB-GYN group practicing out of a hospital is an apparent agent of that hospital."
The proffered evidence established the following facts. Mrs. Cuker, who was in her thirty-third week of pregnancy, was admitted to Lake Wales Hospital with complications. When she began having contractions, her personal obstetrician, Dr. Hardman, began calling Level III hospitals throughout the state to secure a bed for her in the event delivery became imminent. Tampa General, the first Level III hospital to return Dr. Hardman's call, agreed to accept Mrs. Cuker. Dr. Hardman explained to Mrs. Cuker that Lake Wales Hospital is a Level I hospital, and that if delivery became imminent, she would have to be transferred to a Level III hospital so that she and her premature infant could receive appropriate care not offered by a Level I hospital. Mrs. Cuker agreed to the transfer. She was thereafter transferred to Tampa General by ambulance.
Tampa General has a contract with a group of OB-GYNs employed by the University of South Florida Medical School. Under said contract, the physicians' group staffs the labor and delivery department of Tampa General on a full-time basis. At least one of the group's physicians is present in the hospital at all times to treat OB-GYN patients. In return, the group uses Tampa General's facilities to train USF medical students in obstetrics and gynecology. Drs. Williams and Lewis were members of this OB-GYN group.
Upon Mrs. Cuker's arrival at Tampa General, she was examined by Dr. Lewis, a USF resident. Dr. Williams then met with Mrs. Cuker. He told her he would be her physician and he explained his plan for the course of her care. He indicated that if a cesarean had to be performed, he would be the operating physician. After several hours, during which Mrs. Cuker was kept on a fetal monitor, she was advised that the baby would have to be taken immediately. The infant was delivered by cesarean, but was found to have severe neurological injuries. The child died fourteen months later. After hearing the proffered evidence the court ruled as a matter of law that there was insufficient evidence that the doctors were apparent agents of the hospital and directed a verdict for Tampa General. The Cukers do not complain of the procedure utilized by the trial judge.
The Cukers argue that the trial court erred in refusing to allow the issue of apparent agency to go to the jury. They rely upon Irving v. Doctors Hosp. of Lake Worth, Inc., 415 So.2d 55 (Fla. 4th DCA), rev. den., 422 So.2d 842 (Fla. 1982), and Orlando Regional Medical Center, Inc. v. Chmielewski, 573 So.2d 876 (Fla. 5th DCA 1990), rev. den., 583 So.2d 1034 (Fla. 1991). Both of these cases recognize the applicability of the apparent agency theory to hospital liability. The theory of apparent agency is applicable where a hospital holds out a physician as its agent and/or employee, and a patient accepts treatment from that physician in the reasonable belief that it is being rendered on behalf of the hospital. Irving, at 59 (citing Arthur v. St. Peters Hospital, 169 N.J. Super. 575, 405 A.2d 443 (N.J. Super.Ct.Law Div. 1979)). In such a case, the hospital will be liable for the physician's negligence. Id.
In Chmielewski, a hospital was sued for negligent treatment rendered by an emergency room physician. The hospital had contracted with a physician's group to provide doctors to staff the emergency room. The hospital made no representations to the public concerning the emergency room physician's employment status, but the plaintiff assumed that the physician worked for the hospital because the physician was furnished to the plaintiff upon his arrival at the emergency room. The Fifth District noted that Florida courts, under similar circumstances, have held that cases should go to the jury on the issue of the hospital's vicarious liability for the malpractice of the emergency room physician on the theory of apparent agency. Chmielewski, *1000 at 879; see also Irving, at 56; and Webb v. Priest, 413 So.2d 43, 47 n. 2 (Fla. 3d DCA 1982) (whether doctor is agent of hospital is generally a question of fact). Although Chmielewski, Irving and Webb concern the apparent agency doctrine relative to emergency room physicians, we find nothing that limits its application strictly to emergency room settings. Furthermore, the doctrine of apparent agency has been extended by other jurisdictions to hospital departments other than the emergency room. See, e.g., Arthur v. St. Peters Hosp., 405 A.2d 443 (N.J. Super.Ct.Law Div. 1979) (radiology department).
In the instant case, the hospital contracted with a group of physicians to staff one of its departments full time. When Mrs. Cuker was admitted for her Level III hospital needs, a staff physician was provided to her upon her arrival at the hospital. Tampa General certainly held itself out as being equipped with a labor and delivery department which could handle the emergency needs of her infant. All appearances suggested that the labor and delivery department was an integral part of the institution, and there was nothing which put Mrs. Cuker on notice that various departments of the hospital had been franchised out to independent contractors. See Irving, at 58 (citing Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121 (1977)). Furthermore, Mrs. Cuker came to Tampa General on the advice of her personal physician because it was a Level III hospital, capable of treating her baby should it be born prematurely. She did not attempt to secure physicians on her own, but accepted the physicians that were provided to her by the hospital. There were no representations made to Mrs. Cuker concerning the physicians' employment status. These facts create a jury question as to whether the hospital held the doctors out as its employees and whether Mrs. Cuker relied upon the same in accepting treatment from the physicians.[1] Accordingly, we find that the trial court erred in refusing to let the issue of apparent agency go to the jury in this case.
We therefore reverse the final judgment and remand for jury trial.
CAMPBELL, A.C.J., and HALL, J., concur.
NOTES
[1] The legislature has recently amended section 240.215(2), Florida Statutes, to provide that an employee of the Board of Regents who renders medical treatment at a hospital under an agreement such as the one in this case, "shall not be deemed to be an agent of any person other than the Board of Regents in any civil action resulting from any act or omission of the employee or agent while rendering said medical care or treatment." The statute then sets forth criteria to be met for the subsection to apply. This amendment becomes effective on October 1, 1992, and therefore is inapplicable here.