858 So.2d 1158 (2003)
Klaus ROESSLER, Appellant,
v.
Russell W. NOVAK, M.D.; Sarasota Surgical Specialists, P.A., a Florida corporation; Richard J. Lichtenstein, M.D.; SMH Radiology Associates, P.A., a Florida corporation; and Sarasota County Public Hospital d/b/a Sarasota Memorial Hospital, Appellees.
No. 2D02-1670.
District Court of Appeal of Florida, Second District.
November 7, 2003.
*1159 Hector R. Rivera of Duane Morris LLP, Miami, and Dr. Joel S. Cronin, Esq., of Romano, Eriksen & Cronin, West Palm Beach, for Appellant.
Kathleen T. Hessinger of Deacon & Moulds, P.A., St. Petersburg, for Appellee Sarasota County Public Hospital d/b/a Sarasota Memorial Hospital.
Heather C. Goodis of Thompson, Goodis, Thompson, Groseclose & Richardson, P.A., for Appellees Russell W. Novak, M.D., and Sarasota Surgical Specialists, P.A.
No appearance for Appellees Richard J. Lichtenstein, M.D.; and SMH Radiology Associates, P.A.
*1160 SALCINES, Judge.
Klaus Roessler timely appeals a summary final judgment entered in favor of Sarasota County Public Hospital d/b/a Sarasota Memorial Hospital (Sarasota Memorial).[1] Because genuine issues of material fact exist as to Sarasota Memorial's vicarious liability for the alleged negligent acts of the radiologist who rendered services to Mr. Roessler while he was a patient at the hospital, the trial court erred in granting the summary final judgment. Accordingly, we reverse.
On September 19, 1996, Mr. Roessler was examined by a physician at the Sarasota Family Walk-In Clinic. The physician took chest and abdominal x-rays of Mr. Roessler. After viewing the x-rays, the physician diagnosed Mr. Roessler as suffering from a perforated viscus and pneumonia. A perforated viscus is a potentially acute life-threatening condition requiring immediate surgical intervention. The physician immediately made arrangements for Mr. Roessler to go to Sarasota Memorial's emergency room to be seen by a surgeon for evaluation of the perforated viscus and surgery. Mr. Roessler went from the family clinic directly to Sarasota Memorial's emergency room. After being evaluated in the emergency room, Mr. Roessler was admitted to the hospital.
The next day, on September 20, 1996, scans[2] of Mr. Roessler's abdomen were taken in Sarasota Memorial's radiology department while he was an inpatient. Dr. Richard J. Lichtenstein, a board certified radiologist, analyzed and interpreted those scans because he was the radiologist on duty at Sarasota Memorial at the time the scans were brought to be interpreted. Dr. Lichtenstein was not acquainted with Mr. Roessler at that time.
After Mr. Roessler had been admitted to Sarasota Memorial for six days, an operation was performed on his perforated viscus. Although he survived, Mr. Roessler developed serious complications which required approximately a two and one-half month admission in Sarasota Memorial. During that time, Mr. Roessler developed renal failure, a heart condition, systemic sepsis, and multiple brain abscesses which had to be surgically removed.
Mr. Roessler subsequently filed an action against Sarasota Memorial for medical malpractice based upon vicarious liability as well as for negligent destruction of evidence. The present appeal concerns only the summary judgment entered on Mr. Roessler's claim for medical malpractice. In that claim, Mr. Roessler alleged that Dr. Lichtenstein misinterpreted the scans taken in Sarasota Memorial's radiology department and was negligent in failing to include an abdominal abscess in his differential diagnosis of Mr. Roessler's abdominal scans. He further alleged that Dr. Lichtenstein did so while an agent of Sarasota Memorial, that he did so within the scope of the agency, and that the hospital *1161 was, thus, vicariously liable for Dr. Lichtenstein's alleged negligence.
In response, Sarasota Memorial asserted in its answer, among other affirmative defenses, that Dr. Lichtenstein was an independent contractor and was not an agent, servant, or employee of Sarasota Memorial. Sarasota Memorial filed a motion for summary judgment which asserted, in relevant part, that it was not liable for the acts of Dr. Lichtenstein because he was not an employee or agent of Sarasota Memorial. The trial court granted Sarasota Memorial's motion for summary judgment and entered a final judgment thereon.
In this appeal, we are asked to determine whether Sarasota Memorial satisfied its burden to establish that no genuine issues of material fact existed regarding its vicarious liability, thereby entitling it to summary judgment as a matter of law. We find that Sarasota Memorial did not satisfy that burden.
As a general rule, a principal may be held liable for the acts of its agent that are within the course and scope of the agency. Jaar v. Univ. of Miami, 474 So.2d 239 (Fla. 3d DCA 1985). Although some agencies are based upon an express agreement, a principal may be liable to a third party for acts of its agent which are within the agent's apparent authority. See Thomas D. Sawaya, Florida Personal Injury and Wrongful Death Actions, § 12.18, at 747 (2003) (discussing agency principles generally and in the context of medical malpractice actions). Apparent authority is authority which a principal knowingly tolerates or permits, or which the principal by its actions or words holds the agent out as possessing. Taco Bell of Cal. v. Zappone, 324 So.2d 121, 123 (Fla. 2d DCA 1975). The rationale for the doctrine of apparent authority is that a principal should be estopped to deny the authority of an agent when the principal permitted an appearance of authority in the agent and, in so doing, justified a third party's reliance upon that appearance of authority as if it were actually conferred upon the agent. Liberty Mut. Ins. Co. v. Sommers, 472 So.2d 522, 524 (Fla. 1st DCA 1985); see also Irving v. Doctors Hosp. of Lake Worth, Inc., 415 So.2d 55, 59 (Fla. 4th DCA 1982).
An apparent agency exists only if all three of the following elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation.[3]Mobil Oil *1162 Corp. v. Bransford, 648 So.2d 119, 121 (Fla.1995). Apparent authority does not arise from the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself. Izquierdo v. Hialeah Hosp., Inc., 709 So.2d 187, 188 (Fla. 3d DCA 1998). Rather, apparent authority exists only where the principal creates the appearance of an agency relationship. Id.
While some hospitals employ their own staff of physicians, others enter into contractual arrangements with legal entities made up of an association of physicians to provide medical services as independent contractors with the expectation that vicarious liability will not attach to the hospital for the negligent acts of those physicians. See Thomas D. Sawaya, Florida Personal Injury and Wrongful Death Actions, § 12.18, at 751-52 (2003). Indeed, Sarasota Memorial and the professional association of radiologists with which Dr. Lichtenstein was affiliated had entered into such an independent contractor agreement.
Under certain circumstances, however, a hospital may be held vicariously liable for the acts of physicians, even if they are independent contractors, if these physicians act with the apparent authority of the hospital. Cuker v. Hillsborough County Hosp. Auth., 605 So.2d 998, 999 (Fla. 2d DCA 1992). The doctrine of apparent authority has been applied to physicians who rendered care and treatment to individuals treated in hospital emergency rooms, see Orlando Regional Medical Center, Inc. v. Chmielewski, 573 So.2d 876 (Fla. 5th DCA 1990), as well as in hospital departments other than emergency rooms, see Cuker, 605 So.2d 998. The question of a physician's apparent authority to act for a hospital is often a question of fact for the jury. See Cuker, 605 So.2d at 999 (Fla. 2d DCA 1992); Chmielewski, 573 So.2d at 876.
In the present matter, evidence presented to the trial court for the purpose of the summary judgment proceeding demonstrated that Sarasota Memorial maintained a radiology department which was physically located within the hospital's grounds. Sarasota Memorial contracted with SMH Radiology Associates, P.A., for it to be the exclusive provider of professional radiological services at the hospital. Dr. Lichtenstein was an employee of SMH Radiology on the date he interpreted Mr. Roessler's scans. Neither Dr. Lichtenstein nor SMH Radiology had offices outside of Sarasota Memorial's hospital grounds. The radiologists employed by SMH Radiology, including Dr. Lichtenstein, worked at Sarasota Memorial to provide all professional radiological services twenty-four hours a day, seven days a week, to Sarasota Memorial's inpatients and outpatients.
Mr. Roessler sought the services offered by Sarasota Memorial when he went to Sarasota Memorial's emergency department. *1163 He was admitted to Sarasota Memorial as an inpatient through Sarasota Memorial's emergency department. Once Mr. Roessler arrived at Sarasota Memorial and was admitted as an inpatient, the hospital provided him with the health care services and providers it determined to be necessary. Such services included inpatient professional radiological services, which were provided by Sarasota Memorial through its radiology department. After abdominal scans were taken in its radiology department, Sarasota Memorial assigned Dr. Lichtenstein to interpret them. Like the plaintiff in Cuker, 605 So.2d 998, Mr. Roessler did not attempt to secure a specialist on his own, but instead accepted the physician provided to him by the hospital.
During a trial, other facts might be developed which could negate a conclusion that Sarasota Memorial should be vicariously liable under an apparent agency theory. However, as presented to the trial court the foregoing facts created a jury question concerning whether Sarasota Memorial, through its actions, represented that Dr. Lichtenstein was its apparent agent. Therefore, the entry of the summary judgment was improper.
Reversed and remanded for further proceedings consistent herewith.
NORTHCUTT, J., Concurs.
ALTENBERND, C.J., Concurs with opinion.
ALTENBERND, Chief Judge, Concurring.
I concur because precedent requires me to do so. I believe, however, that our twenty-year experiment with the use of apparent agency as a doctrine to determine a hospital's vicarious liability for the acts of various independent contractors has been a failure. Patients, hospitals, doctors, nurses, other licensed professionals, risk managers for governmental agencies, and insurance companies all need to have predictable general rules establishing the parameters of vicarious liability in this situation. Utilizing case-specific decisions by individually selected juries to determine whether a hospital is or is not vicariously liable for the mistakes of a radiology department, an emergency room, or some other corporate entity that has been created as an independent contractor to provide necessary services within the hospital is inefficient, unpredictable and, perhaps most important, a source of avoidable litigation. Our society can undoubtedly function well and provide insurance coverage to protect the risks of malpractice if there is either broad liability upon the hospital for these services as nondelegable duties or if liability is restricted to the independent contractor. The uncertainty of the current system, however, does not work. The supreme court or the legislature needs to simplify the rules of liability in this area.
As well explained in the majority opinion, in the context of tort law, apparent agency was intended to create vicarious liability for a principal who retains an independent contractor and then represents to the world that the independent contractor is an agent whom the principal has the authority to control. When a specific plaintiff actually relies upon the misrepresentation to his or her detriment, the plaintiff is entitled to recover from the principal for the negligence of the independent contractor. See generally Fla. Std. Jury Instr. (Civ.) 3.3(b)(2). To some extent, apparent agency can be viewed as a form of vicarious liability for personal injuries and property damage that is warranted because of false information negligently supplied by the principal for the guidance of others. See generally Fla. Std. Jury *1164 Instr. (Civ.) 8.2. This theory works reasonably well to create vicarious liability for isolated cases of negligence involving motor vehicles or premises liability. See Mobil Oil Corp. v. Bransford, 648 So.2d 119, 121 (Fla.1995) (no jury question where reliance not established by plaintiff); Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491, 493-94 (Fla.1983), receded from on other grounds by Mobil Oil Corp., 648 So.2d 119 (jury question whether franchisor liable for incident on franchisee's premises); Mather v. Northcutt, 598 So.2d 101 (Fla. 2d DCA 1992); Font v. Stanley Steemer Int'l, Inc., 849 So.2d 1214 (Fla. 5th DCA 2003) (jury question whether franchisor is liable for automobile accident involving franchisee); Dalia v. Elec. Realty Assocs., Inc., 629 So.2d 1075 (Fla. 3d DCA 1994) (same).[4] It has not worked well to establish responsibility for torts in the context of a complex institution like a hospital that has many interrelated independent contractors working side-by-side for the same customers.
It appears that Florida first utilized apparent agency in the context of medical malpractice in the early 1980s. See Webb v. Priest, 413 So.2d 43 (Fla. 3d DCA 1982); Irving v. Doctor's Hosp. of Lake Worth, 415 So.2d 55 (Fla. 4th DCA 1982). I suspect that the doctrine arose at that time because that is when hospitals first began spinning off their departments into separate corporations. Over the last twenty years, the apparent agency theory has not allowed the law to establish predictable, general rules of liability because a theory that requires a representation by the principal and reliance by the plaintiff is inherently case specific. Thus, after twenty years of precedent, if a hospital were sued by two different patients for two identical acts of malpractice occurring on the same day and committed by the same doctor in the radiology department, the hospital's vicarious liability would be a fact question for resolution by two different juries. Because such liability is based on case-specific representations by the defendant and reliance by the plaintiff, the two juries would be free to decide that the hospital was vicariously liable for one act but not the other.
More than a century ago, Oliver Wendell Holmes theorized that trial by jury should be a practical way to obtain greater certainty in the law. Juries could take the "featureless generality" of the standards announced in negligence law and create narrower, more precise rules through a "process of specification." Oliver Wendell Holmes, The Common Law 89-90 (1881). That process may have succeeded to some extent in other areas of tort law, but it has failed in the area of vicarious liability for the acts of medical professionals.
Two recent cases, which are admittedly distinguishable from today's case, seem to favor a theory of nondelegable duty over that of apparent agency in the context of medical negligence. See Shands Teaching Hosp. & Clinic, Inc. v. Juliana, 28 Fla. L. Weekly D2027, ___ So.2d ____, 2003 WL 22023474 (Fla. 1st DCA Aug.29, 2003); Carlisle v. Carnival Corp., 28 Fla. L. Weekly D1991, ___ So.2d ____, 2003 WL 22014591 (Fla. 3d DCA Aug.27, 2003). This trend suggests that hospitals should be vicariously liable as a general rule for activities within the hospital where the patient cannot and does not realistically have the ability to shop on the open market for another provider.[5] Given modern marketing *1165 approaches in which hospitals aggressively advertise the quality and safety of the services provided within their hospitals, it is quite arguable that hospitals should have a nondelegable duty to provide adequate radiology departments, pathology laboratories, emergency rooms, and other professional services necessary to the ordinary and usual functioning of the hospital.[6] The patient does not usually have the option to pick among several independent contractors at the hospital and has little ability to negotiate and bargain in this market to select a preferred radiology department. The hospital, on the other hand, has great ability to assure that competent radiologists work within an independent radiology department and to bargain with those radiologists to provide adequate malpractice protections for their mutual customers. I suspect that medical economics would work better if the general rule placed general vicarious liability upon the hospital for these activities. Thus, I would consider adopting a theory of nondelegable duty, similar to the approach used in Shands, if it were not for the existing precedent that employs the theory of apparent agency.
NOTES
[1] The summary final judgment in favor of Sarasota Memorial was entered only as to one count of a two-count complaint filed against it. The partial final summary judgment was an appealable final order because the causes of action set forth in count one (the hospital's vicarious liability for the alleged negligence of certain health care providers) and count two (the hospital's spoliation of evidence) were distinct claims which were not interrelated under the facts of the present case. See, e.g., S.L.T. Warehouse Co. v. Webb, 304 So.2d 97 (Fla.1974).
[2] In the record before this court, the abdominal scans taken of Mr. Roessler by the radiology department at Sarasota Memorial are sometimes referred to as CT (computerized tomographic) scans, and at other times are referred to as CAT (computerized axial tomographic) scans.
[3] In the portion of its motion for summary judgment addressing Mr. Roessler's medical malpractice claim, Sarasota Memorial did not contest Mr. Roessler's reliance or change of position based upon that reliance and, rather, asserted only that it did not represent that Dr. Lichtenstein acted as its agent. In this appeal, Sarasota Memorial suggests that Mr. Roessler's claim should fail on the latter two elements required for a showing of apparent agency. It reasons that where Mr. Roessler never spoke to Dr. Lichtenstein, there was no reliance and since there was no reliance, there was no change in position on Mr. Roessler's part.

The crucial issue as to the latter two elements, however, is not what interaction transpired between Dr. Lichtenstein (the agent) and Mr. Roessler (the third party), but rather what representations were made by Sarasota Memorial (the principal) which would have led Mr. Roessler (the third party) to rely upon it to provide radiological services.
We note that the Fifth District, addressing whether these latter elements had been established by the plaintiffs in the case before it, stated:
In this case, it was shown without dispute that the Chmielewskis came to the ORMC [Orlando Regional Medical Center] emergency room because of ORMC's name and reputation as a hospital and that Boleslaus [Chmielewski] allowed himself to be treated there. The injuries he suffered (if casually connected to the treatment he received) were clearly a "detriment." These additional elements of reliance and detriment appear to us to be subsumed in the scenario of proof in this cause, justifying the trial court's refusal to direct a verdict for ORMC.
However, we note that the Restatement (Second) of Torts quoted above requires no separate proof of "reliance" and "detriment," and further that illustration three of the comments to Restatement (Second) of Agency, section 267 (1958), also does not require these elements, in addition and apart from the initial representation....
The fact of seeking medical treatment in a hospital emergency room and receiving treatment from a physician working there is sufficient.
Orlando Reg'l Med. Ctr., Inc. v. Chmielewski, 573 So.2d 876, 879-80 (Fla. 5th DCA 1990) (citations omitted).
[4] Apparent agency is also used to impose responsibility upon principals for claims that are not based on negligence theories. See Nat'l Indem. Co. v. Consol. Ins. Servs., 778 So.2d 404 (Fla. 4th DCA 2001) (holding liability not established for insurance broker under apparent agency).
[5] Other jurisdictions have attempted to solve this problem by narrowing the doctrine of apparent agencies and establishing general rules that place liability primarily upon the independent contractor. For example, under Kentucky law the fact that a patient reads and signs an admission form containing an independent contractor clause regarding medical personnel is determinative on the issue of ostensible agency. Floyd v. Humana of Va., Inc., 787 S.W.2d 267, 270 (Ky.Ct.App.1989). Even if a patient is unconscious at the time of admission, if the hospital has taken action to notify the public about the status of physicians, an apparent agency is not created. Roberts v. Galen of Va., Inc., 111 F.3d 405, 413 (6th Cir.1997), rev'd on other grounds, Roberts v. Galen of Va., Inc., 525 U.S. 249, 119 S.Ct. 685, 142 L.Ed.2d 648 (1999). In Kentucky, the test is not whether the patient read and signed the form containing the disclaimer; the test is whether the hospital took steps to notify the public about the status of the physicians.
[6] See generally Restatement (Second) of Torts § 416 (1965); William L. Prosser, Handbook on the Law of Torts at 468 (4th ed.1971).