952 So.2d 547 (2007)
NATIONWIDE MUTUAL INSURANCE CO., Appellant,
v.
Frank CHILLURA and Steve Chillura, Appellees.
No. 2D04-4906.
District Court of Appeal of Florida, Second District.
January 19, 2007.
Rehearing Denied April 4, 2007.
*548 John J. Pappas and Anthony J. Russo of Butler Pappas Weihmuller Katz Craig LLP, Tampa, for Appellant.
Raymond T. Elligett of Schropp, Buell & Elligett, P.A., Tampa; and David J. Pettinato and William F. Merlin, Jr., of Merlin Law Group, P.A., Tampa, for Appellees.
Ileana M. Espinosa, Richard Lydecker, and Carlos De Zayas of Lydecker & Wadsworth, LLC, Miami, for Amicus Curiae Citizens Insurance Co.
Harold B. Klite Truppman and Eli L. Samet of Harold B. Klite Truppman, P.A., Miami, for Amicus Curiae United Policyholders.
DAVIS, Judge.
Nationwide Mutual Insurance Co. ("Nationwide") appeals the trial court's amended final judgment entered pursuant to a jury verdict awarding Frank and Steve Chillura damages in the Chilluras' sinkhole claim against Nationwide. We affirm the amended final judgment.
The Chilluras own four adjacent apartment buildings in Tampa, each of which contains four apartments. Nationwide insured the premises and issued a policy that included a specific provision for sinkhole damages.[1] When a sinkhole opened up on the property, resulting in damage to the four buildings, the Chilluras filed a claim seeking payment for the damages. Specifically, they sought payment for the *549 cost to repair, among other things, the exterior walls, the interiors of the apartments, and the foundation slabs. They also sought lost rents. Nationwide rejected the majority of their claims.[2]
The Chilluras filed suit against Nationwide, alleging breach of contract for failure to pay damages as required by the insurance policy. Both parties moved for summary judgment. The trial court partially granted the Chilluras' motion regarding certain coverage issues, finding that the "subsurface foundation stabilization and/or foundation modification repairs" were "necessary repairs to an insured structure to put it back into a pre-loss condition" and that such repairs were covered by Coverage A of the policy, which specified that coverage would be provided for "direct physical loss or damage" to the covered structure. The trial court further concluded that Nationwide "should have tendered insurance proceeds in the amount for repairs calculated under the Actual Cash Value, undisputed, of the lowest amount of [Nationwide's] expert's damage estimates for subsurface repairs and/or modifications necessary to stabilize [the Chilluras'] insured structures." The trial court then determined that Nationwide had breached the insurance policy by refusing to "tender all insurance proceeds due and owing MESSRS. CHILLURA for damages caused to the insured structures, including the `foundation,' `slab,' and `footers supporting the perimeter of the building,' by sinkhole activity." Although the trial court did not specify an amount, it is clear from the record that the summary judgment order was referring to the $272,720 figure that the trial court determined, based on the contractor's estimates, would be required to perform the foundation and subsurface soil repairs as described by Nationwide's expert. The trial court also partially granted Nationwide's motion for summary judgment by determining that the measure of damages under the Building Replacement Cost Extension Endorsement to the policy would be actual cash value since the Chilluras had not performed any of the repairs contemplated in their claims. The remaining issues of coverage and amounts of damages were presented to the jury.[3]
The jury returned a verdict in favor of the Chilluras, awarding them $542,693.70.[4] This amount included some, but not all, of the damages claimed by the Chilluras for interior repairs,[5] additional foundation repairs the Chilluras' expert deemed necessary, some additional exterior repairs, and lost rents. Nationwide appeals the amended final judgment that was entered pursuant to the jury's verdict.
On appeal, Nationwide raises five issues. Although we determine that the trial court was in error in a portion of its summary judgment ruling, as explained below, we conclude that the error does not require reversal of the amended final judgment.
The issue that was the center of most of the arguments before the trial court and *550 was the thrust of this appeal was whether the trial court erred in granting the Chilluras' motion for summary judgment based on a finding that Coverage A of the policy covered the cost of the foundation and subsurface repairs. Coverage A provides that Nationwide will pay for actual damage to a covered structure but specifically excludes damage to the soil.
Prior to trial, each party obtained the services of experts to determine how to repair the foundations that were displaced. Nationwide's expert devised a plan of injecting grout under the foundations to fill in voids resulting from the sinkhole and driving pins or pilings down through the foundation slabs until the pins reached solid rock. This plan called for a total of 140 pins to be placed in the slabs primarily at the points of displacement. The Chilluras' expert devised a similar plan of grout and pins, but his plan called for 280 pins to be placed throughout the slabs, even in areas where the slabs were not displaced.
In considering the motion for summary judgment, the trial court had the deposition of each of the experts to review. Additionally, the trial court had for consideration estimates prepared by Certified Foundations, Inc. (CFI), a contractor retained by the Chilluras to estimate the cost of the repair plan prepared by their experts. However, neither party argued that the trial court should consider the merits of the grout injection separately from the insertion of the pins. Similarly, neither side argued that the cost of one repair should be separated from the cost of the other repair. Rather, the focus of the argument at the summary judgment hearing was whether the "subsurface foundation stabilization and/or foundation modification repairs" as a whole were covered under Coverage A.
Nationwide argued that the cost of injecting grout under the foundations and inserting pins through the foundation slabs did not fall under Coverage A of the policy, but rather was covered under other policy provisions that provided for reimbursement of such costs once the repairs were actually performed. Accordingly, Nationwide argued that it was not liable for the costs because the Chilluras had not made the repairs and that, therefore, there could be no finding of a breach of the insurance contract. Nationwide premised its argument on several theories.
First, Nationwide argued that the grout and pinning were repairs to the soil and not to the structure. Since Coverage A of the policy specifically excluded damage to the soil, Nationwide maintained that these repair costs were excluded. Second, counsel argued that the pins and grout were not related to repairing the damage caused by the sinkhole, but rather were needed to prevent future damage. Counsel maintained that while the cost of repairs to prevent future damage was recoverable under other policy provisions, but not under Coverage A, those other policy provisions required that the repairs actually be performed, which the Chilluras had not done. Additionally, Nationwide argued that, in any event, the measure of damages was actual cash value and that there could be no determination of such. Because the determination of actual cash value would involve reducing the repair or replacement cost by a factor to recognize depreciation, such a method could not be applied to the grout and pins, which were not a part of the original covered structures and were not susceptible to repair or replacement. As such, Nationwide argued that actual cash value could not be determined and that Coverage A of the policy could not apply.
Finally, in a related argument, Nationwide contended that the pins were not a repair to the foundation slabs, but rather *551 were the creation of new structures. Unlike the original structures, in which the foundations were supported by soil, the foundations of the new structures would be supported by pins resting on rock beneath the surface of the soil. Since Coverage A was intended to provide coverage for damage to existing property and not to provide for the construction of a new structure different from the original structure, Nationwide argued that these costs were not included in Coverage A.
In analyzing these arguments, we have found it helpful to separate the foundation repair issue into two subissuesthe propriety of the injection of grout and the propriety of the pinning. Because there was expert testimony on the issue of the grout indicating that grout was recommended to stabilize the soil and to prevent future damage to the structures, which were not covered repairs under the policy, we conclude that the trial court erred by entering summary judgment finding coverage for the cost of the grout under Coverage A of the policy and finding Nationwide in breach of the contract for failing to tender the costs of this repair. This coverage issue should have been submitted to the jury for determination.
However, the testimony from both Nationwide's expert and the Chilluras' experts as to the use of pins was that the pinning procedure was "restorative," that the insertion of the pins would return the structures to their preloss condition, and that the pins would lift the foundations to their prior level. Although Nationwide points to the portion of the deposition of Carlos Odell, one of the Chilluras' experts, in which he described the use of the pins as "stabilization," Odell went on to describe the pins as restoring the stability that the foundations had prior to the sinkholes. Odell specifically stated, "We are doing the minimum required to get them back so that they can operate as they were supposed to have done originally." When considering the whole of Odell's testimony, it is clear that he agreed with Nationwide's expert's opinion that the pins were being used to repair the foundation slabs, not the soil, and that the pins were restorative and not intended to merely prevent future damage.
While Nationwide is correct that the experts opined that the pins would modify the foundations, those same experts also testified that the modification was necessary to return to the foundations the stability that had been lost due to sinkhole damage. Because the expert testimony provided to the trial court resolved any genuine issues of material fact with regard to the minimum number of 140 pins, we conclude that the trial court was correct to determine by summary judgment that the cost of the repairs to the foundations using 140 pins was covered by Coverage A of the policy. See Roessler v. Novak, 858 So.2d 1158 (Fla. 2d DCA 2003) (concluding that the existence of a genuine issue of material fact precludes summary judgment).
There was, however, a difference of opinion as to whether an additional 140 pins would be necessary to restore the foundations to their preloss condition or would merely prevent future loss. The repair plan devised by Nationwide's expert called for only 140 pins, while the Chilluras' expert devised a plan requiring 280 pins. Due to this conflict in testimony, we conclude that a genuine issue of material fact existed and that the trial court did not err in failing to rule on the additional 140 pins in its summary judgment. Id. This was clearly an issue to be resolved by the jury. Id.
With regard to the damages awarded by the summary judgment, the trial court combined the costs of the grout and *552 the minimum 140 pins and awarded the Chilluras $272,720.[6] We conclude that it was error to combine these costs because the evidence was conflicting as to one but not the other. However, this error and the court's error in entering summary judgment as to the grout are irrelevant because the errors do not impact the amended final judgment. From our review of the estimates presented to the trial court, it appears that the proper award of damages should have been a minimum of $136,500. This sum is determined by multiplying the 140 pins by the per pin cost of $975 shown on the estimates. As will be demonstrated below, this error in the amount of damages awarded by the summary judgment does not impact the award contained in the amended final judgment, and as such, the amended final judgment need not be disturbed.
In a related issue, Nationwide argues that the trial court erred in denying its motion for directed verdict regarding the damages for the additional 140 pins specified by the Chilluras' expert. Nationwide argued that the extra 140 pins were not designed to repair existing damage to the foundations, but rather were to prevent future damage. Thus, Nationwide argued that even if the 140-pin plan was covered, as the trial court determined via summary judgment, the evidence presented by the Chilluras was insufficient to support a jury finding that the cost of the more extensive 280-pin plan was covered under Coverage A. As such, Nationwide maintains that the trial court erred in denying its motion for directed verdict on this issue. We disagree.
It is well settled that the construction of an insurance policy is a question of law for the court. However, it is for the jury to determine whether the facts of the case fall within the scope of coverage as defined by the court: "[w]hether a certain set of facts exists to bring a loss to the insured within the terms of a policy is an issue to be determined by the trier of fact." State Farm Fire & Casualty Co. v. Lichtman, 227 So.2d 309, 311 (Fla. 3d DCA 1969).
Jones v. Utica Mut. Ins. Co., 463 So.2d 1153, 1157 (Fla.1985) (citation omitted). This is a coverage issue that is properly determined by the trier of fact. Id. The jury considered the testimony and concluded that the cost of the more extensive repairs fell within Coverage A. Because the record contains sufficient evidence to support the jury's verdict, we affirm the award for the costs of the additional 140 pins.
Nationwide also argues that it was error for the trial court to deny its motion for directed verdict as to the Chilluras' claim for damages to the interiors of the apartments. At trial, the Chilluras' expert testified that since the foundations of the four buildings were displaced, the interior *553 walls necessarily would have moved or would have been placed under stress by the restraint on the movement created by the roof and other portions of the structures. Accordingly, the expert testified that it was necessary to remove the dry-wall and insulation from at least one side of each interior wall to inspect the wiring, plumbing, and nails within the walls that may have been damaged or compromised. Nationwide maintains that this was an attempt by the Chilluras to prevent future damage and that since no proof of direct physical damage to these walls had been presented, the claim was for speculative damages not covered by Coverage A. According to Nationwide, any such claim would fall under separate coverage that required actual performance of the repairs before Nationwide would be liable.
This issue was presented by Nationwide in a pretrial motion for summary judgment and then in a motion for directed verdict made at the close of the Chilluras' case; the trial court denied both motions. Again, whether there is coverage under a given set of facts is a jury question. Jones, 463 So.2d at 1157. Because there was competent, substantial evidence presented to the jury to support this award, the trial court was correct to deny the motions. Accordingly, we affirm the trial court on this issue.[7]
Nationwide next argues that the trial court erred in failing to grant its motion for summary judgment in which it argued that the Chilluras had breached the insurance contract by failing to provide the necessary documentation to prove their loss of rents claim. The Chilluras argued that Nationwide had advised them that a claim for lost rents would not be considered until the repairs had been completed. Accordingly, when the Chilluras filed their claim of loss form, they noted that the loss of rents claim would be left open as no repairs had been undertaken. When Nationwide rejected their other claims, the Chilluras filed suit and included a count for loss of rents. The Chilluras argued that since Nationwide breached the policy by rejecting their other claims, they were relieved of strict compliance with the documentation requirements of the policy. Further, since Nationwide was provided discovery regarding the loss of rents count, and since Nationwide was allowed the opportunity to take depositions as a part of discovery in preparation for trial, Nationwide was not prejudiced in defending this issue at trial. The trial court denied the motion for summary judgment and allowed the jury to determine whether the facts supported Nationwide's argument that the Chilluras had waived this claim by *554 failure to comply with the terms of the policy.[8] Because issues of material fact remained to be resolved by the jury, the trial court was correct to deny the summary judgment on this issue. See Roessler, 858 So.2d 1158.
Finally, Nationwide argues that the trial court erred in denying its motion to compel the Chilluras to grant Nationwide's agents access to the buildings for inspection. The trial court denied the motion because it was so close to the start of the trial and because the Chilluras represented to the trial court that Nationwide already had been granted access eighteen times during the pretrial period. We review the trial court's denial of the motion for an abuse of discretion. See Rollins Burdick Hunter of N.Y., Inc. v. Euroclassics Ltd., 502 So.2d 959 (Fla. 3d DCA 1987); Medel v. Republic Nat'l Bank of Miami, 388 So.2d 327 (Fla. 3d DCA 1980). After reviewing this record, we cannot conclude that the trial court abused its discretion in denying the motion, and we affirm the trial court's decision.
In summary, we conclude that the trial court was correct to find coverage and award damages for the cost of the repairs to the foundations that involved the use of the initial 140 pins. Further, we conclude that the jury's finding of coverage and awarding of the cost of the additional 140 pins was supported by competent, substantial evidence. Similarly, we determine that the jury's award of damages for the repairs to the interiors, repairs to the exteriors, and the loss of rents also were supported by the record. Based on these conclusions, the trial court's award of damages as recited in the amended final judgment is correct. As previously stated, we affirm the summary judgment award of $136,500 for the cost of the initial 140 pins. When this sum is added to the amount awarded by the jury's verdict and the $63,317.49 that Nationwide paid prior to the litigation, the total exceeds the stated policy limits of $603,456. Since the trial court's amended final judgment awards damages based on the stated policy limits, we conclude that the trial court's error in the damages awarded in the summary judgment does not impact the final amount of the award granted by the amended final judgment and that the amended final judgment should be affirmed.[9]
Affirmed.
NORTHCUTT and LaROSE, JJ., Concur.
NOTES
[1] This was a Business Provider Policy using form BPP-0001 (7-94).
[2] Nationwide did, however, tender a check for approximately $63,000 for limited repairs to the exterior walls and some of the interior damage.
[3] The trial court also found that Nationwide owed the Chilluras $4428.60 for the repair of damages to the parking lot. Neither this part of the summary judgment order nor the ruling on actual cash value has been challenged on appeal.
[4] This amount did not include the $272,720 awarded by the trial court's summary judgment for minimal foundation and subsurface soil repairs or the $63,317.49 previously paid by Nationwide.
[5] Neither the record nor the verdict suggests which of the claimed costs for interior repairs the jury awarded.
[6] The record suggests that the trial court arrived at the sum of $272,720 after reviewing the cost estimates prepared by CFI. These estimates were submitted to show the approximate cost of injecting grout and installing 280 pins as described by the Chilluras' expert. CFI estimated the minimum and maximum costs for the grout installation under each of the four buildings. The trial court used the minimum cost for each building and multiplied these figures by the cost per unit indicated. All four estimates indicated that the cost per pin was $975. Accordingly, the trial court added to the estimated costs for injecting the grout a sum to provide for the installation of the 140 pins called for by Nationwide's expert instead of the 280 pins recommended by the Chilluras' expert. Our computation indicates that multiplying the lower figure for each building by the per unit cost and adding the cost of 140 total pins plus the other fixed costs provided in the estimates equals the $272,720 awarded by the trial court. Nationwide did not submit any alternative cost estimates, nor did it challenge the reasonableness of the cost estimates prepared by CFI.
[7] We note that Nationwide also argued at trial for a directed verdict on the basis that the evidence presented by the Chilluras did not prove the actual cash value of damages, but rather showed only repair costs. Although this argument was suggested in Nationwide's brief, this was not the thrust of the issue on appeal. Furthermore, Nationwide abandoned the argument in its reply brief by stating that "[w]hether the jury's verdict was supported by evidence is not the issue on appeal. The issue is whether Nationwide is contractually obligated to pay the nonincurred cost for tearing out undamaged property." We also note that while the amicus brief filed by Citizens Insurance Company also discusses the issue of the sufficiency of the evidence to support a finding of the actual cash value of the damages, this court cannot grant relief on an issue raised by the amicus brief but not by the appellant. See Turner v. Tokai Fin. Servs., Inc., 767 So.2d 494, 496 (Fla. 2d DCA 2000) ("[A]mici lack standing to raise issues not raised by the parties."); Acton v. Ft. Lauderdale Hosp., 418 So.2d 1099, 1101 (Fla. 1st DCA 1982) ("Amici do not have standing to raise issues not available to the parties, nor may they inject issues not raised by the parties."). Accordingly, we do not address the sufficiency of the evidence argument.
[8] Nationwide raised two issues as part of its failure to cooperate defense. One was related to the failure to provide documents in support of the loss of rents claim, and the other was the failure of the Chilluras to sit for the requested "exam under oath." Initially, the trial court denied Nationwide's motion for summary judgment, allowing the jury to resolve these affirmative defenses. However, during the charge conference at trial, Nationwide's counsel asked that the two issues be segregated and requested, since there were no issues of fact to be resolved regarding the failure to sit for the exam under oath, that the trial court rule on that one issue. As the amended final judgment reflects, the trial court found that there were no issues of fact in dispute with regard to the exam under oath and that, as a matter of law, that affirmative defense should be denied. Nationwide has not explicitly challenged that portion of the amended final judgment on appeal.
[9] The amended final judgment awarded $540,138.51, which was calculated by offsetting the amount stated in the policy as policy limits by the amount previously paid by Nationwide and then adding $70,366.06 to represent the prejudgment interest and $21,441.30, the amount awarded by the jury for the loss of rents.