972 So.2d 214 (2007)
Gerardo GUADAGNO, individually and as Personal Representative of the Estate of Dianna Guadagno, Appellants,
v.
LIFEMARK HOSPITALS OF FLORIDA, INC., d/b/a Palmetto General Hospital, and Inphynet Contracting Services, Inc., Appellees.
No. 3D05-2536.
District Court of Appeal of Florida, Third District.
December 5, 2007.
*216 Julio Arango, Coral Gables; Arthur Joel Berger, Miami, for appellants.
McCrane, Nosich & Ganz, and Daniel Harwin; Falk, Waas, Hernandez, Cortina, Solomon & Bonner, and Paul H. Field, Coral Gables, for appellees.
Before RAMIREZ, SUAREZ and SALTER, JJ.
SUAREZ, J.
The appellant, Gerardo Guadagno, husband of the deceased, Dianna Guadagno, appeals from an Order on Post Trial Motions granting judgments notwithstanding the verdict and a Final Judgment in favor of the defendants, Lifemark Hospitals of Florida, Inc., d/b/a Palmetto General Hospital (Palmetto), and Inphynet Contracting Services, Inc. (Inphynet). In the post trial hearing, the trial court found that the evidence was legally insufficient to prove either that the emergency room doctor's negligence was the cause of Dianna Guadagno's death or that the emergency room doctor was the apparent agent of the hospital. The court also found that there was competent substantial evidence to support the jury's finding of comparative negligence on the part of the deceased and upheld its ruling at trial that the plaintiff's expert could not testify on the question of causation because a proper predicate had not been laid. We affirm on all points.
Dianna Guadagno was injured in a slow-speed crash while riding a minibike. Paramedics took her to the emergency room *217 at Palmetto General Hospital where she signed admission documents stating she understood that the emergency room doctor was an independent contractor and not an agent or employee of the hospital. After x-rays and a CAT scan, emergency room personnel determined that the decedent had a small fracture of the greater trochanter of her right leg (that part of the upper femur that rests near the hip socket), as well as various cuts, abrasions and bruises. Dr. Valdes was the emergency room physician on duty. Dr. Valdes conferred by phone with Dr. Krikorian, the orthopedic surgeon on call for Palmetto, regarding the radiological and physical exam results. The x-rays and CAT scans revealed no other fractures. Dr. Valdes performed a physical exam of the patient and found her able to walk unassisted for a short distance. The leg fracture was not one that typically called for admission to the hospital and Dr. Krikorian recommended that the decedent be discharged with crutches, and be told to follow up with him the following Monday, three days later. The decedent was discharged from the emergency room early the following morning. The written discharge instructions did not include any advice on how to avoid deep vein thrombosis, although Dr. Valdes testified that his verbal discharge instructions included advice to stay as mobile as possible.
The decedent went home and stayed immobile in bed for the next several days, expressing a great deal of pain. She rejected requests by her family to go directly to the emergency room and opted instead to try to make an appointment with Dr. Krikorian, which appointment was delayed until Tuesday. On Tuesday, her family took her to the hospital to see Dr. Krikorian. She could not walk and was in a wheelchair. She fell from the wheelchair, unconscious, while in the parking lot on her way to see Dr. Krikorian and died in the emergency room. It was later determined that she suffered a pulmonary embolism. A clot had developed in her leg, dislodged and traveled to her heart, causing sudden death.
The decedent's family sued Palmetto and Inphynet as vicariously liable for the medical malpractice of Dr. Valdes. Dr. Valdes is not an employee of Palmetto, but is employed by Inphynet, the contractor for emergency room services to Palmetto. Plaintiff asserted that Dr. Valdes did not give the decedent sufficient discharge instructions, which should have included the admonition to move about and not remain in bed in order to avoid deep vein thrombosis. Palmetto and Inphynet both answered that the decedent herself was the sole proximate cause of her own death. At trial, various experts opined on the level of discharge instructions necessary for someone diagnosed with a small fracture of the greater trochanter. Family members testified that the decedent, although in much pain, refused their offers to take her to the emergency room. The jury concluded that Dr. Valdes was 10% negligent, and that the decedent was 90% negligent, and that all the other parties were not liable. Both defendants filed motions for a directed verdict, arguing that the plaintiffs had not established causation. The plaintiffs filed for a new trial based on evidentiary rulings that allegedly foreclosed establishing causation. At a post-trial hearing, the trial court granted the defendants' motions for directed verdict and denied the plaintiff's motion for new trial on all issues raised and rendered this in a Final Judgment.
The appellant first argues that had the decedent been given appropriate discharge instructions to include getting out of bed and walking around to prevent clot formation, it is more likely than not she would not have suffered this risk factor. *218 The appellant asserts that a jury could reasonably conclude that the decedent would not have died had Dr. Valdes given her these instructions upon discharge. We disagree. The issue of causation in a medical malpractice lawsuit requires the plaintiff to show that the injury complained of more likely than not resulted from the defendant's negligence. The case of Gooding v. University Hospital Building, Inc., 445 So.2d 1015, 1020 (Fla. 1984) provides the test:
A plaintiff in a medical malpractice action must show more than a decreased chance of survival because of a defendant's conduct. The plaintiff must show that the injury more likely than not resulted from the defendant's negligence in order to establish a jury question on proximate cause. In other words, the plaintiff must show that what was done or failed to be done probably would have affected the outcome.
Here, even if the plaintiff undeniably established that Dr. Valdes' discharge instructions were below the standard of care (a conclusion the record does not support), the plaintiff did not establish that the absence of a specific instruction was the proximate cause of the decedent developing a blood clot which then dislodged and traveled to her heart. The plaintiff did not show that the injury more likely than not resulted from Dr. Valdes's alleged negligence in failing to instruct the patient to try to be as mobile as possible. The connection is simply too tenuous, and we affirm the directed verdict on this issue.
The appellant next asserts that the trial court erred in finding that there was no evidence from which a jury could have concluded that Dr. Valdes was an actual or apparent agent of Palmetto. We disagree. The evidence at trial established that Dr. Valdes was an independent contractor. Generally, a hospital may not be held liable for the negligence of independent contractor physicians to whom it grants staff privileges. See Insinga v. LaBella, 543 So.2d 209, 212, 214 (Fla.1989); Public Health Trust of Dade County v. Valcin, 507 So.2d 596, 601 (Fla.1987). However, "[u]nder certain circumstances . . . a hospital may be held vicariously liable for the acts of physicians, even if they are independent contractors, if these physicians act with the apparent authority of the hospital." Roessler v. Novak, 858 So.2d 1158, 1162 (Fla. 2d DCA 2003). There was no evidence at trial that the doctor was an actual agent of the hospital. The emergency room documents signed by the decedent upon her admission, state that the doctor is an independent contractor and not an agent or employee of Palmetto. An apparent agency exists only if all three of the following elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation. Roessler at 1161. None of these elements was established at trial. Contrary to the appellant's assertions, apparent authority does not arise from the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself. See Izquierdo v. Hialeah Hosp., Inc., 709 So.2d 187, 188 (Fla. 3d DCA 1998). Rather, apparent authority exists only where the principal creates the appearance of an agency relationship, see id., and in this case, the principal, Palmetto General Hospital, expressly disavowed an agency or employee relationship, conveyed that information to the decedent, and the decedent acknowledged this by signing the admission documents. We therefore affirm the directed verdict on this issue.
*219 The appellant next asserts that the trial court erred in denying the plaintiff's motion for new trial on the issue of comparative negligence. We affirm the trial court on this issue. There was competent substantial evidence presented at trial to allow the jury to conclude that the decedent was partially responsible for the complication. Additionally, Florida law recognizes that a party waives the issue of legal sufficiency of the evidence by failing to move for a directed verdict on that issue at time of trial. See Prime Motor Inns, Inc. v. Waltman, 480 So.2d 88, 90 (Fla. 1985) (One must move for a directed verdict at the end of all the evidence or one waives the right to make that motion.); Fee, Parker & Lloyd, P.A. v. Sullivan, 379 So.2d 412, 418 (Fla. 4th DCA 1980) (holding that an appellate court is powerless to review the sufficiency of the evidence to support the verdict if the appellant made no motion for a directed verdict). The appellant failed to move for a directed verdict based on legal insufficiency of the evidence to support finding the deceased comparatively negligent, and thus is foreclosed from raising that issue on appeal.
Last, appellant claims that the trial court abused its discretion by disallowing the plaintiff's question to the expert witness as to ultimate causation, where the plaintiff failed to establish the proper predicate for that opinion. We find the trial court did not abuse its discretion. The proper predicate could have been established by asking the expert witness what reasonable emergency room standards are for this specific injury at this hospital, how specifically the doctor's instructions fell below standards, and whether that specific breach of care was the proximate cause of the patient's death. The record shows that the plaintiff had opportunity to provide the proper predicate for the questions on causation, but failed to do so despite frequent advice from the trial court.
Affirmed.