939 So.2d 185 (2006)
PRESTON POPE AND GINGER POPE, ETC., Appellants,
v.
WINTER PARK HEALTHCARE GROUP, LTD., ET AL., Appellees.
Case No. 5D04-3284.
District Court of Appeal of Florida, Fifth District.
Opinion filed October 6, 2006.
James B. Tilghman, Jr., and Gary D. Fox, of Stewart, Tilghman, Fox & Bianchi, P.A., Miami, and Kenneth M. Sigelman, M.D., J.D., of Kenneth M. Sigelman & Assoc., San Diego, CA, for Appellants.
Sylvia H. Walbolt and Annette M. Lang, of Carlton Fields, P.A., St. Petersburg, and Richard Schwamm and Eugene Pettis, of Haliczer, Pettis & Schwamm, P.A., Orlando, for Appellees.
GRIFFIN, J.
This appeal arises from a medical malpractice suit against Winter Park Healthcare Group, Ltd., d/b/a Winter Park Memorial Hospital ["Winter Park Hospital"], and Dr. Michael McMahan, a neonatologist, for the negligent care of Preston and Ginger Pope's ["the Popes"] newborn son, Tyler.[1] It was discovered after Tyler's birth that he suffered from fetal-maternal hemorrhage,[2] and compression of the umbilical vein, which would normally have carried oxygen-rich blood to Tyler from the placenta. In the hours following his birth, Tyler's breathing became more labored and he required resuscitation; however, it was alleged that this was not done timely or correctly, causing permanent brain damage. The Popes contend that Dr. McMahan, the on-call neonatologist, was negligent in failing to be present, in failing to communicate, in failing to order necessary tests and in failing to order the necessary means of resuscitation.
The Popes brought suit against Winter Park Hospital, Dr. McMahan and Mrs. Pope's obstetrician, Dr. Wolford, based on a claim of negligence. The Popes alleged that Winter Park Hospital was liable for Dr. McMahan's negligent acts because Winter Park Hospital had a "nondelegable" duty to treat Tyler with due care. The Popes contend that when Mrs. Pope was admitted to Winter Park Hospital for the delivery of her child, an implied contract for treatment was formed between her and Winter Park Hospital. Alternatively, they assert that the consent form that Mrs. Pope signed constitutes an express contract with Winter Park Hospital that obligates Winter Park Hospital to provide them with the medical or surgical treatments or procedures she and her son might need, the delegation of which to an independent contractor physician does not extinguish the hospital's duty. They contend that the trial court erred in directing a verdict in favor of Winter Park Hospital.
The Popes would like for this court to adopt the position of Judge Altenbernd's concurring opinion in Roessler v. Novak, 858 So. 2d 1158, 1164 (Fla. 2d DCA 2003) (Altenbernd, J., concurring). There, Judge Altenbernd observed that the use of apparent agency as the doctrine for determining hospital liability for the negligence of independent contractors was a failure and that, in the context of medical negligence, a theory of nondelegable duty is superior. He suggested that hospitals should be liable as a general rule for activities within the hospital because a patient does not realistically have the ability to shop on the open market for other providers of medical services and is limited to the care of physicians selected by the hospital. 858 So. 2d at 1164. He said he would adopt a theory of nondelegable duty if it were not for the prevailing precedent that employs the theory of apparent agency. Id. at 1165.
Winter Park Hospital agrees that their consent form constitutes an express contract between the hospital and the Popes, but they contend the terms of the contract preclude liability. They also point out that the existence of the express contract between the Popes and the hospital precludes an implied contract under Florida law. They further assert that an "implied duty" to provide non-negligent medical and surgical services does not exist in Florida law, and that Judge Altenbernd's concurrence supports the directed verdict by expressly recognizing that current Florida law does not impose nondelegable duties on hospitals for the negligence of independent contractor physicians.
Although, as is almost always so, Judge Altenbernd makes sense in his concurring opinion in Roessler, we agree that Florida law does not currently recognize an implied nondelegable duty on the part of a hospital to provide competent medical care to its patients. Florida law does recognize, however, that such a duty can be undertaken pursuant to an express contract. Here, it is undisputed that an express contract exists between the Popes and Winter Park Hospital, and we have concluded that an issue remains unresolved concerning the scope of the express contractual undertaking which may have given rise to a duty to provide non-negligent neonatal care to baby Tyler. We accordingly reverse the judgment and remand.[3]
The independent contractor/nondelegable duty analysis that inevitably dominates most of the cases in the context of hospital liability is confusing and somewhat misleading because duties that arise under the law of tort and duties that may arise under contract are often intertwined.[4] The tort principle of respondeat superior makes an employer liable to third parties for the negligence of an employee, whom he controls and directs. If a hospital employs a physician, the hospital is responsible (in respondeat superior) for his or her negligence. When an independent contractor physician is hired, however, liability to third parties usually does not arise. This is because the law recognizes that a person ought to be able to hire someone to perform a specific task without exposure to liability to third parties for negligent performance of the work as long as the person doing the hiring does not retain control or direction over how the work is to be done. Thus, for example, if a hospital hires a roofing contractor to repair a roof and in the course of the job, the roofer drops a bucket on the head of a passerby, the roofer is liable to the third person but the hospital typically is not because the roofer is an independent contractor.
Although it is the general rule that one who hires an independent contractor is not liable for injuries caused by an independent contractor's negligence, there are exceptions recognized in the law of tort. See Carrasquillo v. Holiday Carpet Serv., Inc., 615 So. 2d 862, 863 (Fla. 3d DCA 1993); Fisherman's Paradise, Inc. v. Greenfield, 417 So. 2d 306, 307 (Fla. 3d DCA 1982). In fact, the Third District has referred to the rule of non-liability of independent contractors as the "riddled rule" because it is "riddled with exceptions." See Gordon v. Sanders, 692 So. 2d 939, 41, (Fla. 4th DCA 1997); City of Coral Gables v. Prats, 502 So. 2d 969 971 (Fla. 3d DCA 1987).
As a matter of Florida tort law, the key exception to this rule of non-liability in medical negligence cases arises where the physician is either an actual or apparent agent of the hospital. See, e.g., Roessler, 858 So. 2d at 1162. The other important exception under Florida tort law, established in Insigna v. LaBella, 543 So. 2d 209 (Fla. 1989), provides that the hospital can be liable in tort for failing to exercise due care in the selection and retention of an independent contractor physician on the hospital staff. Insinga, 543 So. 2d at 214. Insigna is an extension of liability under Florida law as a matter of public policy. Id. It does not supplant or eliminate any other basis for liability.
The rule of non-liability for acts of an independent contractor also fails where the duty is nondelegable, and here is where the confusion arises. In Florida case law, nondelegable duties are often said to arise out of the common law, statutes or regulations, or contract. See Dixon v. Whitfield, 654 So. 2d 1230, 1232 (Fla. 1st DCA 1995); E.J. Strickland Const. v. Department of Agric. & Consumer Serv., 515 So. 2d 1331, 1334-35 (Fla. 5th DCA 1987). Under the common law, nondelegable duties typically arise out of the performance of ultra-hazardous activity. "There are no specific criteria for determining whether or not a duty is nondelegable except for the rather ambiguous defining characteristic that the responsibility is so important to the community that the [original party] should not be allowed to transfer it to a third party." Dixon, 654 So. 2d at 1232. As Judge Altenbernd observed, Florida law does not recognize that the mere relationship between a hospital and its patient gives rise to a nondelegable duty to provide competent medical care. Roessler, 858 So. 2d at 1163. Nor, in this case, does a nondelegable duty on the part of a hospital arise out of any statute or regulation cited to us.
Concepts of "independent contractor" and "nondelegable duty" have no application, however, when a person or entity doing the hiring of the independent contractor has undertaken by contract with a third party to perform a service and hiring an independent contractor is, essentially, hiring a sub-contractor to perform the work which the hiring person has undertaken by contract to perform. This distinction was cogently explained by the Third District Court of Appeal in Gordon v. Sanders, 692 So. 2d 939 (Fla. 3d DCA 1997). In Gordon, a homeowner had hired two individuals to remove trees from his property. They, in turn, subcontracted the work to two other men. In the process of removal, one of the trees was allowed to fall on the homeowner's house, causing considerable damage. The two persons originally hired to do the work were sued, and they defended on the basis that the ones at fault were independent contractors. The Gordon court dispatched that defense as follows:
The evidence in this record is sufficient to go to the jury on an exception for nondelegable duties, specifically the principle that one who undertakes by contract to do for another a given thing cannot excuse himself to the other for a faulty performance by showing that he hired someone else to perform the task and that other person was the one at fault. Mills v. Krauss, 114 So.2d 817 (Fla. 2d DCA 1959), cert. denied, 119 So.2d 293 (Fla.1960). In other words, where the contracting party makes it her or his duty to perform a task, that party cannot escape liability for the damage caused to the other contracting party by the negligence of independent contractors hired to carry out the task. The record reflects sufficient evidence to go to the jury for its determination on this principle.
Id. at 941.
Although, as discussed above, this is often treated in the cases as a "nondelegable" exception to the "independent contractor" rule, in fact, contract is a distinct basis of liability and "nondelegability" is not the issue. It is an elemental aspect of contract law that, absent an agreement to the contrary, the rights accruing under a contract can be freely given up by assignment, but duties assumed under a contract cannot be transferred to another. Performance of the duties assumed under a contract are usually delegable, but, even if delegable, the delegation will not relieve the promisor of the duty to perform his obligation under the contract. Thus, if a hospital does undertake by contract to provide medical care, it cannot throw off that obligation simply by hiring an independent contractor. The use by hospitals of independent-contractor physicians eliminates "respondeat superior" liability, but it will not relieve the hospital of any contractual duties it has undertaken. A hospital can, by contract, undertake different duties or greater duties than those imposed by the common law of tort.
The decision of the First District Court of Appeal in Shands Teaching Hospital & Clinic, Inc. v. Juliana, 863 So. 2d 343 (Fla. 1st DCA 2003), offers an example of a hospital's liability based on its contract with the patient. That case dealt with the liability of a perfusionist, a technician who was not a physician, who negligently performed his services causing severe injury to a two-month-old infant who underwent heart surgery. The Shands court found liability based on the language of the hospital's express contract with the patient in the admission form to provide "such diagnostic procedures, hospital care, [and] medical treatment . . . which in the judgment of my physician may be considered necessary or advisable while a patient at Shands." 863 So. 2d at 344. Importantly, the Shands court found that the form excluded from the definition of "hospital care [and] medical treatment" the services of "all physicians, residents and students who provide services in Shands," but concluded the perfusionist fit within none of those exceptions. Shands contended that it was not responsible for the perfusionist's negligence because neither the perfusionist nor his employer was Shands' agent or had an appearance of an agency relationship, but the Shands court correctly distinguished between the contractual undertaking of the hospital and principles of agency or respondeat superior. Id. at 347-49. Agreeing with the lower court's conclusion that the perfusionist was legally a subcontractor performing the hospital's contract with its patient, the court concluded that the hospital's duty to the patient could not be unilaterally delegated without specific notice. Id. at 350. Because nothing in the admission form or operating permit gave the patient notice that the perfusionist was not discharging Shands' duties under its contract with the appellants, Shands could not avoid liability for negligence on the part of the party to whom Shands had delegated its own contractual duty.
The Fourth District Court of Appeal also addressed the issue of contractual liability of a hospital for physician malpractice in Irving v. Doctors Hospital, Inc., 415 So. 2d 55 (Fla. 4th DCA 1982). The case involved the liability of a hospital for the alleged negligent diagnosis and treatment by an emergency room physician that resulted in injury to a minor. The issue there was whether certain jury instructions should have been given. The jury had found no liability because the emergency room doctor was not an employee of the hospital. The trial court gave the standard instruction on vicarious liability that the hospital was not responsible for such negligence if the person employed was an independent contractor. Appellant maintained that, even if the emergency room doctor were an independent contractor, the hospital was nevertheless liable under one of several exceptions to the independent contractor rule. Appellant requested but was denied three jury instructions on the exceptions. One instruction addressed the rule that one cannot escape his contractual liability by delegating his performance under the contract to an independent contractor. Id. at 59-60. The Irving court held that if the hospital was entitled to have the jury instructed on the non-liability of an independent contractor, the appellant was entitled to have the jury apprised of the exceptions to that rule. The Fourth District court said: "[I]f the trial court had instructed on these exceptions to the independent contractor rule, the jury might have found the hospital liable regardless of [the physician's] employment status." Id. at 61.[5]
In this case, both the Popes and Winter Park Hospital agree that the consent form executed by Mrs. Pope constitutes an express contract between these parties.[6] They disagree, however, as to the terms and legal effect of this agreement. The consent form signed by Mrs. Pope before admission provides:
CONSENT FOR MEDICAL AND SURGICAL TREATMENT: I authorize Winter Park Memorial Hospital (WPMH) to furnish the necessary medical or surgical treatments, or procedures, including diagnostic, x-ray, and laboratory procedures, anesthesia, hospital services, drugs and supplies as may be ordered by the attending physician(s), his assistants or his designees. I am aware that the practice of medicine and surgery is not an exact science and I acknowledge that no guarantees have been made to me as to the result of treatment, diagnostic procedures or examinations in the hospital. I recognize that the physicians who practices [sic] at WPMH are not employees or agents of the hospital but are independent physicians; the hospital may delegate to these independent physicians those services physicians normally provide; and any questions relating to care my physician has given or ordered should be directed to him/her.
This consent form plainly puts the reader on notice that physicians practicing at Winter Park Hospital are independent contractors, not agents or employees. The form also authorizes Winter Park Hospital to delegate to such physicians the services physicians normally provide. The form does not, however, dispose of the question whether the delegation of the duty relieves Winter Park Hospital of liability.
Winter Park Hospital argues that the first sentence of the consent form represents an undertaking on its part only to provide those necessary medical or surgical treatments as may be ordered by the attending physician. If the physician is negligent, it reasons, Winter Park Hospital cannot be liable. Winter Park Hospital's reading of the scope of its undertaking is possible, given the syntax of the sentence, because it is unclear what "as may be ordered by the attending physician(s)" refers to. Whether their interpretation of the sentence has the legal effect they contend is not self-evident.[7]
This first sentence of the consent form can also be read to mean that Winter Park Hospital undertook to provide Ginger Pope and Tyler the necessary medical or surgical treatments or procedures, including whatever diagnostic, x-ray, laboratory procedures, anesthesia, etc. as may be ordered by the attending physician. Winter Park Hospital's express reservation of the right to delegate the services physicians normally provide implies a recognition on its part that it has undertaken the duty to provide those services. A duty that does not exist cannot be delegated.
Under the law of tort, the hiring of an independent contractor, unless done negligently, precludes liability because the hiring party has no duty to an injured third party to procure non-negligent performance of the independent contractor. However, delegation of a contractual duty to an independent contractor does not eliminate the duty. Section 318 of the Restatement Second of Contracts sets forth the controlling principle of law:
Delegation of Performance of Duty
(1) An obligor can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise.
(2) Unless otherwise agreed, a promise requires performance by a particular person only to the extent that the obligee has a substantial interest in having that person perform or control the acts promised.
(3) Unless the oblige agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor.
(emphasis added.)
There is no language in this contract between Winter Park Hospital and the Popes of any assent by Mrs. Pope that the delegation of Winter Park Hospital's duty to provide the necessary medical treatment to independent contractor physicians will discharge the hospital from its contractual obligations. Acknowledgement on the part of Mrs. Pope that the duty to provide "medical or surgical treatments" can be delegated to an independent physician does not constitute an agreement on the part of Mrs. Pope to discharge Winter Park Hospital from any contractual duty it assumed. Delegation and discharge are two different things entirely, performed by different contracting parties. Contractual language of discharge should be clear, yet the only language in the form that may even obliquely refer to discharge is the final sentence, which provides that "questions" relating to the physician's care should be directed to the physician.
Both the Popes and Winter Park Hospital urge on appeal that the contract unambiguously means what they say it means and neither addresses any doubt about the consent form's meaning. However, we find that the contract is ambiguous and that the interpretation of this agreement potentially includes one or more questions of fact. Given the nature of the agreement and the fact that it was drafted by Winter Park Hospital, ambiguities of the sort at issue here could be construed against the hospital, Planck v. Traders' Diversified, Inc., 387 So. 2d 440 (Fla. 4th DCA 1980), but because the parties have barely addressed the interpretation of the contract, we leave this issue for further development on remand.
REVERSED and REMANDED.
PALMER and ORFINGER, JJ., concur.
NOTES
[1] The hospital is the only appellee. The other defendants were either dismissed or dropped from the suit before trial.
[2] Fetal maternal hemorrhage means Tyler's blood transferred to his mother through the placenta over a period of days or weeks before birth.
[3] Winter Park Hospital also argues that this court may affirm if the right result is reached at trial but for the wrong reason, and the record evidence supports an alternative theory. The hospital suggests that it was entitled to a directed verdict based on the Popes' failure to prove that Dr. McMahan was negligent. After our review of all of the evidence presented, we conclude that the Popes did present sufficient evidence of Dr. McMahan's negligence and reject the hospital's alternative basis for affirmance.
[4] See, e.g., Jones v. Tallahassee Mem'l Reg'l Healthcare, Inc., 31 Fla. L. Weekly D860, (Fla. 1st DCA Mar. 23, 2006). See generally, Ellen Gwynn, Hospital Liability in Florida: The Nondelegable Duty Doctrine, 64 Fla. B.J. 14 (1990).
[5] See also Jaar v. University of Miami, 474 So. 2d 239, 243-44 (Fla. 3d DCA 1985), where the public Health Trust of Dade County entered into a contract with the University of Miami for the latter to provide medical care to patients. The University was unable to escape liability for the negligence of the negligent physician because delegating performance of its contract to the physician did not discharge its contractual duty.
[6] In attempting to obtain review of the Shands decision in the Florida supreme court, the strategy adopted by the hospital was to attack the notion that the admission form could constitute a contractual undertaking on the part of the hospital to provide a level of care to the patient. See Petitioner's Brief on Jurisdiction, Shands Teaching Hosp. and Clinics, Inc. v. Juliana, Case No. SC03-1656. This approach failed in that the supreme court denied review.
[7] Assuming the hospital did undertake by contract to provide to Baby Pope "the necessary medical or surgical treatments or procedures," we cannot credit the notion that this undertaking would not include "non-negligent" medical care. "Necessary medical care" inherently means competent medical care.