955 So.2d 1 (2006)
Judith WAX, Appellant,
v.
TENET HEALTH SYSTEM HOSPITALS, INC.; Robert Topper, M.D.; and Robert Topper, M.D., P.A., Appellees.
No. 4D04-1673.
District Court of Appeal of Florida, Fourth District.
May 17, 2006.
Opinion on Rehearing March 7, 2007.
*2 Philip M. Burlington of Burlington & Rockenbach, P.A., West Palm Beach, and *3 Jack Scarola, Darryl L. Lewis, and Rosalyn Sia Baker-Barnes of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, for appellants.
Robert Weill, Louise H. McMurray, James C. Sawran and Jason A. McGrath of McIntosh, Sawran, Peltz & Cartaya, P.A., Miami, for appellee Tenet Health System Hospitals, Inc.
Amy R. Mosel and Marlene S. Reiss of Stephens, Lynn, Klein, La Cava Hoffman & Puya, P.A., Miami, for appellees Robert Topper, M.D., and Robert Topper, M.D., P.A.
FARMER, J.
In this medical malpractice case, the trial court stopped plaintiff's witnesses from testifying as to issues involving efforts to resuscitate the deceased and related matters involving the vagus nerve. The court held that such testimony would have been outside the designations of these expert witnesses in the pretrial disclosure, or it would have been cumulative. The record does not support the trial judge's decision in either regard. We reverse.
Gary Wax, a 37-year-old man, was admitted to the West Boca Medical Center, owned by Tenet Health System Hospitals, for outpatient, elective hernia surgery by Dr. Topper. Within 20 minutes of the onset of surgery, a "code" was called. Despite attempts at resuscitation, he died on the table. His family was told that he simply "stopped breathing." The condition immediately precipitating death may have been respiratory failure, but the reasons for the loss of respiration were at the center of the dispute at trial.
His wife's wrongful death, medical malpractice action alleged negligence in pre-surgical consultation and assessment, in the administration and management of anesthesia for the procedure, and in the attempts at resuscitation. Defendants[1] asserted that the basis for ultimate oxygen deprivation was an inadvertent stimulation of the vagus nerve by the surgeon during the procedure. This in turn would have relevance to the doctors' and staff perceptions as to whether and when Wax's life was in danger and the manner in which they undertook resuscitation.
The parties disputed the proper standard of care for the attempts at resuscitationwhich, again, is said to have depended on the cause of the respiratory failure. Plaintiff sought to introduce testimony from an expert, Dr. Sterba, as to the probability that "manipulation of the hernia sac caused [a] vagus nerve response." Defendants objected that this line of questioning would be outside the scope of this expert's expected testimony in plaintiff's pretrial disclosure of expert witnesses. Plaintiff's designation had specified that Dr. Sterba would testify to: "the negligent code resuscitation efforts" and "specifically that the [personnel involved] delayed in establishing a patent airway and adequate ventilation during the code and delayed in establishing adequate circulatory aids during the code." Defendants argued that the designation did not specifically state that Dr. Sterba would give an opinion touching on the vagus nerve theory, and further that Dr. Sterba "did not express any opinions in deposition with regard to the vagus nerve, [and] whether it could have caused any of this."[2]
*4 Plaintiff relies on Klose v. Coastal Emergency Services of Fort Lauderdale, 673 So.2d 81, 83 (Fla. 4th DCA 1996), in support of her argument that this exclusion was prejudicial and reversible. In that case, at defendant's discovery deposition of plaintiff's expert, plaintiff's counsel said that the expert's trial testimony would be limited to pre- and post-operative breaches of the standard of care. We noted that the expert was plaintiff's only pulmonologist for the trial. The trial judge excluded testimony from the witness as to breaches during the bronchoscopy procedure. We reversed upon a holding that defendant would not have been prejudiced by the admission of the testimony because defendant had actually questioned the witness at the deposition about the procedure. We also held that any prejudice from defendant's confusion about the scope of the proposed trial testimony could have been alleviated by a brief adjournment of the trial for a further deposition on the matter.
We note that it was the defendants who introduced the issue of the vagus nerve to refute the claim of negligence in resuscitating the patient. As a result, plaintiff had designated the expert to testify about the proper standard of care for resuscitation. Plaintiff contends that the standard of care for resuscitation depended on what had caused respiratory failure. She argues that designating the expert's subject as negligence in resuscitation served, by necessary implication, to inform defendants that the vagus nerve could be part of Dr. Sterba's testimony at trial. Our study of the record confirms that from the circumstances, testimony concerning the vagus nerve was arguably inferable by the designation that the substance of Dr. Sterba's testimony would deal with the standard of care on resuscitation.
As we did in Klose, we note that Dr. Sterba was plaintiff's only designated expert on the subject at issue, emergency resuscitation. Exclusion of his offered testimony was therefore especially prejudicial because of his unique expertise. Klose holds that in the absenceas hereof any misconduct or impropriety by the party seeking to admit the testimony, this kind of prejudice impels the trial judge first to exhaust other measures less drastic than outright exclusion. A brief adjournment for a deposition of the witness on the vagus nerve issue was clearly the first remedy if the trial judge thought the designation insufficient to apprise defendant of the vagus nerve issue.
We do not think that these designations of the substance of testimony in pretrial notices of experts should be subjected to literalistic, mechanical or crabbed readings. If a disclosed witness's trial testimony is even arguably within the designation, exclusion of the testimony by the witness should not be employed. In the instances where a good faith misimpression occurs, the trial judge has other remedies to correct any injustice. These would include a delay in the testimony of that witness to allow additional discovery testimony of the proposed witness or, even in an extreme case perhaps, giving the party claiming to have been aggrieved by the designation the right to call additional experts. Hence, we do not agree that the record supports the trial judge's reasoning that this testimony should have been excluded in its entirety because of defendants' contention that they were not given proper notice of the expert's planned testimony.
The trial judge also excluded plaintiff's rebuttal testimony from Dr. Ernst. Just before the close of the defense, the court asked plaintiff's counsel if he anticipated any rebuttal. He responded that he *5 intended to call Dr. Ernst. Defendants objected, claiming that plaintiff was making an "attempt, under the guise of rebuttal, to have cumulative testimony from a second anesthesiology expert." Plaintiff proffered that Dr. Ernst would testify regarding defendants' vagus nerve theory, opining that it would be a "physiologic impossibility" for "a message [to] reach the brain through the sympathetic nervous system" after anesthesia below the T5 level in the spine. The court responded: "that [has] already been testified to" and that introduction of another expert addressing the issue was "getting a little cumulative."
In Griefer v. DiPietro, 708 So.2d 666 (Fla. 4th DCA 1998), Judge Warner explained that:
"[a] trial court clearly may exercise its discretion in imposing sanctions. In this case, however, the trial court, by excluding the foregoing testimony, engaged in judicial overkill. . . . A trial court should only exclude witnesses under the most compelling of circumstances. This is particularly so when the exclusion would be of a party's most important witness."
708 So.2d at 671. More specifically with regard to rebuttal witnesses she said: "Although a trial court has broad discretion regarding the admissibility of rebuttal testimony, it abuses that discretion when it limits non-cumulative rebuttal that goes to the heart of the principal defense." 708 So.2d at 672; see also Castillo v. Bush, 902 So.2d 317, 324 (Fla. 5th DCA 2005) (same).
Plaintiff argues that Dr. Ernst's exclusion was prejudicial because it rendered her unable to present evidence from any anesthesiologist to rebut defendants' vagus nerve theory. It is true that in her case-in-chief, plaintiff had presented testimony from a cardiologist and a surgeon relating to the cause of death. But, she argues, Dr. Ernst's testimony would not have been cumulative and would have been her only specific attempt to address the vagus nerve theory from the perspective of anesthesiology. Defendants respond, again, that the substance of Dr. Ernst's testimony would have been repetitive and that the only difference would be his expertise.
The record does not support the trial court's exclusion as cumulative. Plaintiff had not previously presented evidence from an anesthesiologist on the vagus nerve theory, and the earlier evidence cited by defendants was more generally directed to resuscitation rather than the specific details of the vagus nerve defense. To be cumulative the substance, function and effect of the previous evidence should be the same. Here, as proffered, it would not have repetitive. Again, because this proposed evidence went to the heart of the theory of defense, it was prejudicial error to exclude it entirely without giving plaintiff an opportunity to present it without engaging in an unreasonable duplication of previous evidence. As Judge Warner made clear in Griefer:
"To strike all of the testimony was too extreme[;] . . . the trial court should have barred only the new opinions, not those opinions to which the expert had testified in deposition and were known to the appellees."
708 So.2d at 671.
Reversed for New Trial.
STONE and POLEN, JJ., concur.

ON MOTIONS FOR REHEARING
FARMER, J.
We deny appellees' motions for rehearing and rehearing en banc without comment. It appears, however, that our opinion was deficient in leaving unresolved the issue concerning the hospital's liability for the alleged negligence of the anesthesiologist. *6 We therefore grant appellant's motion for rehearing as to that issue only.
Plaintiff's complaint alleged that the hospital had a non-delegable duty to provide anesthesiology services and was therefore directly liable for the negligence of the anesthesiologist with whom the hospital contracted to provide such services.[1] In agreeing to the surgery the decedent signed a surgical consent form that is *7 headed with the name of the hospital. It authorized Dr. Topper to perform an "incisional hernia repair with mesh." Paragraph 3 of this form recites: "I consent to the administration of anesthesia as deemed necessary by South Palm Beach Anesthesiologists, P.A., in charge of my case." This provision went on to add that the patient also agreed to:
"general, epidural and/or other regional anesthesia with or without intravenous sedation and accept risks including: minor complications such as backache, headache, rash, tingling, nerve damage, awareness and major complications including but not limited to stroke, heart attack, paralysis, or death."
Evidence in discovery would support a finding that the anesthesiologist's conduct fell below the standard of care for the specialty. Plaintiff sought by motion for partial summary judgment a pretrial determination that the hospital had a non-delegable duty to provide anesthesiology services for surgical patients like decedent. The hospital responded with its own motion seeking judgment of non-liability, arguing that as a matter of law it had no such duty and could not be held liable for any negligence of the anesthesiologist. The trial court denied plaintiff's motion and granted the relief sought by the hospital. Plaintiff argues on appeal that the court's ruling was error.
In Pope v. Winter Park Healthcare Group, Ltd., 939 So.2d 185 (Fla. 5th DCA 2006), the Fifth District recently confronted this same issue under nearly identical circumstances. That case also involved a claim against a hospital for the medical negligence of a physician. There a newborn baby experienced fetal-maternal hemorrhage and compression of the umbilical vein, which in the hours following birth, led to labored breathing and required resuscitation. The baby suffered permanent brain damage. The complaint alleged that attempts at resuscitation were neither timely nor competently performed. It also alleged that the neonatologist on call was negligent by his absence and in failing to stay in communication or order indicated tests. Plaintiffs contended that the hospital had a non-delegable duty to provide mother and newborn baby with appropriate care. This duty, they argued, arose from an implied contract formed by the admission of the patient and that any attempt by the hospital to delegate this duty to an independent contractor physician was ineffective. They argued that the summary judgment in favor of the hospital on grounds of apparent agency was error. The hospital responded that the consent form was in fact an express contract between plaintiffs and the hospital, and it precludes liability for the negligence of the doctor. The hospital also argued that Florida law does not recognize an implied duty on hospitals to provide non-negligent medical services or impose any non-delegable duties on a hospital in regard to the negligence of doctors.
In a penetrating and thorough opinion, Judge Griffin analyzed the rights and liabilities of the patient and hospital under Florida law. She began by acknowledging that Florida law recognizes that a hospital can undertake by express contract to perform a specific duty. The consent form constitutes, she said, such an express contract between the hospital and the parents. The issue lay in deciding the scope of the express contractual undertaking by the hospital and whether it included a duty to provide non-negligent care to the newborn baby.
Judge Griffin then proceeded to analyze the possible theoretical underpinnings for such a duty. Her analysis was this. The issue of hospital liability for the negligence of doctors intermingles tort and contract *8 law. Respondeat superior, a principle of tort law, makes a hospital liable for the negligence of its agents. A doctor might be such an agent if directly employed by the hospital. When a hospital engages a doctor under an independent contract to perform a specific task, however, the hospital cannot be liable to third parties injured by the negligent performance of that contract when the hospital has no power of control over the independent contractor's performance. But tort law does recognize exceptions even to this independent contractor rule, one of which is apparent agency. On the other hand, merely granting staff privileges to doctors, by itself, does not ordinarily make the doctors apparent agents of the hospital. Another exception is the negligent retention of an independent contractor, as when the contractor is unqualified or has known defects. Finally, there is an exception from the independent contractor rule for duties that the hospital may not delegate. That is the subject of both this case and Pope.
As Judge Griffin pointed out:
"In Florida case law, nondelegable duties are often said to arise out of the common law, statutes or regulations, or contract. Under the common law, nondelegable duties typically arise out of the performance of ultra-hazardous activity. `There are no specific criteria for determining whether or not a duty is nondelegable except for the rather ambiguous defining characteristic that the responsibility is so important to the community that the [original party] should not be allowed to transfer it to a third party.' Florida law does not recognize that the mere relationship between a hospital and its patient gives rise to a nondelegable duty to provide competent medical care. Nor, in this case, does a nondelegable duty on the part of a hospital arise out of any statute or regulation cited to us." [c.o.]
939 So.2d at 188.
Unlike Pope, in this case plaintiff does not rely only on a Florida regulation to supply a duty on the part of the hospital that may not be delegated. Indeed, here plaintiff relies on the pertinent statute, which defines a "hospital" as an establishment that, among other things, regularly makes available "treatment facilities for surgery." § 395.002(13)(b), Fla. Stat. (2005). A related statute requires the Agency for Health Care Administration (AHCA) to adopt rules that include:
"reasonable and fair minimum standards for ensuring that . . . [s]ufficient numbers and qualified types of personnel and occupational disciplines are on duty and available at all times to provide necessary and adequate patient care and safety."
§ 395.1055(1)(a), Fla. Stat. (2005). The rules must also ensure that "[l]icensed facilities are established, organized, and operated consistent with established standards and rules." § 395.1055(1)(d), Fla. Stat. (2005). Acting under the authority of these statutes (and others), AHCA has adopted the following regulation:
"Each Class I and Class II hospital, and each Class III hospital providing surgical or obstetrical services, shall have an anesthesia department, service or similarly titled unit directed by a physician member of the organized professional staff." [e.s.]
Fla. Admin. Code R. 59A-3.2085(4).
Plaintiff argues that these statutes and the regulations adopted thereunder establish that the hospital had an expressed legal duty to furnish anesthesia services to its surgical patients "consistent with established standards." § 395.1055(1)(d), Fla. Stat. (2005). In providing such services the hospital was obligated to do so in *9 accordance with established standards for anesthesiology. In other words, plaintiff argues, the hospital had a clearly established legal duty to furnish non-negligent anesthesia services.
We conclude that because the statute and regulation impose this duty for non-negligent anesthesia services on all surgical hospitals, it is important enough that as between the hospital and its patient it should be deemed non-delegable without the patient's express consent. Personal autonomy in making health care decisions is the policy established by statute, and where health care is concerned that usually means informed decisions. See § 765.102(1), Fla. Stat. (2005) ("The Legislature finds that every competent adult has the fundamental right of self-determination regarding decisions pertaining to his or her own health, including the right to choose or refuse medical treatment."); and § 765.106, Fla. Stat. (2005) ("The provisions of this chapter are cumulative to the existing law regarding an individual's right to consent, or refuse to consent, to medical treatment and do not impair any existing rights or responsibilities which a health care provider, a patient . . . or a patient's family may have under the common law, Federal Constitution, State Constitution, or statutes of this state.").
In Pope, Judge Griffin wrestled with that alternative basis for direct duties whereby a party is said to have voluntarily assumed a duty by contract and then sought to delegate the contractual duty to an independent contractor. She said:
"It is an elemental aspect of contract law that, absent an agreement to the contrary, the rights accruing under a contract can be freely given up by assignment, but duties assumed under a contract cannot be transferred to another. Performance of the duties assumed under a contract are usually delegable, but, even if delegable, the delegation will not relieve the promisor of the duty to perform his obligation under the contract. Thus, if a hospital does undertake by contract to provide medical care, it cannot throw off that obligation simply by hiring an independent contractor. The use by hospitals of independent-contractor physicians eliminates `respondeat superior' liability, but it will not relieve the hospital of any contractual duties it has undertaken. A hospital can, by contract, undertake different duties or greater duties than those imposed by the common law of tort."
939 So.2d at 188-89. She pointed out that this court recognized that theory of hospital liability in Irving v. Doctors Hospital of Lake Worth, Inc., 415 So.2d 55 (Fla. 4th DCA 1982), where we held that plaintiff was entitled to have the jury instructed on the non-delegable duty doctrine as to the status of an emergency room physician.
Judge Griffin thus proceeded to analyze whether the Pope admission consent form ruled out the assumption of a non-delegable duty, as the hospital argued. In Pope the patient authorized the hospital to furnish surgical and related services "as may be ordered by the attending physician." 939 So.2d at 190. The form went on to say that the patient "recognizes" that the doctors are not employees or agents of the hospital but are instead "independent physicians" to whom the hospital may delegate "those services physicians normally provide." Id. In substance the form was different from the one employed by West Boca Medical Center in this case.
In this case the language in the form signed by the patient is different. Here Gary Wax authorized Dr. Topper to perform the hernia repair and "consented" to the administration of anesthesia by South Palm Beach Anesthesiologists, P.A. He also agreed to "general, epidural *10 and/or other regional anesthesia with or without sedation," and accepted specified risks ranging all the way from minor complications to death.[2]
The critical fact in both cases, however, is that there is no express agreement by the patient that the delegation of the duty in question also operated to discharge the hospital from liability to the patient for any negligence in its provision. As Judge Griffin wrote:
"The form also authorizes [hospital] to delegate to such physicians the services physicians normally provide. The form does not, however, dispose of the question whether the delegation of the duty relieves [hospital] of liability.
"[Hospital] argues that the first sentence of the consent form represents an undertaking on its part only to provide those necessary medical or surgical treatments as may be ordered by the attending physician. If the physician is negligent, it reasons, [hospital] cannot be liable. [Hospital's] reading of the scope of its undertaking is possible, given the syntax of the sentence, because it is unclear what `as may be ordered by the attending physician(s)' refers to. Whether [its] interpretation of the sentence has the legal effect they contend is not self-evident.7
7 Assuming the hospital did undertake by contract to provide to Baby Pope "the necessary medical or surgical treatments or procedures," we cannot credit the notion that this undertaking would not include "non-negligent" medical care. "Necessary medical care" inherently means competent medical care.
"This first sentence of the consent form can also be read to mean that [hospital] undertook to provide Ginger Pope and Tyler the necessary medical or surgical treatments or procedures, including whatever diagnostic, x-ray, laboratory procedures, anesthesia, etc. as may be ordered by the attending physician. [Hospital's] express reservation of the right to delegate the services physicians normally provided implies a recognition on its part that it has undertaken the duty to provide those services. A duty that does not exist cannot be delegated.
"Under the law of tort, the hiring of an independent contractor, unless done negligently, precludes liability because the hiring party has no duty to an injured third party to procure non-negligent performance of the independent contractor. However, delegation of a contractual duty to an independent contractor does not eliminate the duty." [e.s.]
939 So.2d at 190-91.
Pertinent to the issue of discharge of the contractual duty, Judge Griffin went on to explain:
"There is no language in this contract between [hospital] and the Popes of any assent by Mrs. Pope that the delegation of [hospital's] duty to provide the necessary medical treatment to independent contractor physicians will discharge the hospital from its contractual obligations. Acknowledgement on the part of Mrs. Pope that the duty to provide `medical or surgical treatments' can be delegated to an independent physician does not constitute an agreement on the part of Mrs. Pope to discharge [hospital] from *11 any contractual duty it assumed. Delegation and discharge are two different things entirely, performed by different contracting parties. Contractual language of discharge should be clear, yet the only language in the form that may even obliquely refer to discharge is the final sentence, which provides that `questions' relating to the physician's care should be directed to the physician." [e.s.]
939 So.2d at 191. The opinion in Pope finds the form's language ambiguous, that the ambiguity could be construed against its drafter, but that the issue of the disposition of the ambiguity should be left for the trial court on remand because the parties had "barely addressed" the proper interpretation of the contract.
We agree with and follow the reasoning of Judge Griffin in Pope.[3] In this case we find both a statutory and a contractual basis for the hospital's duty of providing non-negligent, competent surgical anesthesia services to its patient. Under the admission consent form, we find that the patient consented to the Group's administration of anesthesia services. Unlike the contract in Pope, however, we find no language at all in this form that might fairly and reasonably be construed to stand as an agreement to discharge the hospital from its primary statutory and contractual duty of providing non-negligent anesthesia services. If there were negligence in the provision of anesthesia services, then the Hospital would be liable as a matter of law.
We therefore reverse the trial court's summary judgment on this issue and remand for consistent proceedings in the trial ordered by our original opinion on the claim of negligence.
STONE and POLEN, JJ., concur.
NOTES
[1] Only the hospital and the surgeon are involved in this appeal. They will be referred to throughout as defendants.
[2] We note that defense counsel conducted the deposition examination and was not precluded or influenced away from the subject of the vagus nerve during the deposition. There is no reason appearing in the record as to why defense counsel did not explore the subject with the witness.
[1] The contract between the hospital and South Palm Beach Anesthesiology, P.A. (Group), provides in part:

A. Hospital operates an acute care hospital known as West Boca Medical Center (Facility) which maintains an Anesthesiology Department (the Department) on the Facility's premises to provide certain anesthesiology services, and Hospital desires to assure physician coverage for the Department.
. . .
1. a. While this Agreement is in effect, Group shall provide Physicians to provide all anesthesiology services at Facility. . . . Physicians shall also . . . perform such other duties as may from time to time be requested by Facility. . . .
. . .
1. f. Group agrees that all anesthesiology services provided pursuant to this Agreement shall be performed in compliance with all applicable standards set forth by law or ordinance or established by the rules and regulations of any federal, state or local agency, department, commission, association or other pertinent governing, accrediting, or advisory body . . . having authority to set standards for health care facilities. Physician shall perform all anesthesiology services in accordance with all Facility rules, regulations, procedures, policies, and bylaws and all Facility Medical Staff rules, regulations, procedures, policies and bylaws.
. . .
3. a. Hospital shall, at no cost to Group, provide all equipment, facilities, supplies, utilities . . . and other services . . . as the Hospital shall, in its sole discretion, determine from time to time to be necessary for the performance of the anesthesiology services and the proper operation of the Department.
b. Hospital shall employ such nonphysician personnel as Hospital deems necessary for the proper operation of the Department and the performance of the anesthesiology services or any other Group obligation set forth in this agreement. The parties hereby agree that all such personnel shall be subject to the direction and control of Director and Physicians in the performance of professional services to patients.
. . .
6. [Each physician provided by Group] shall act at all times under this Agreement as independent contractors. The parties agree that Hospital shall not have and shall not exercise any control or direction over the manner or method by which [such physician] provides anesthesiology services. However, Group shall require [all physicians] to perform at all times in accordance with currently approved methods and standards of practice for anesthesiology services in the medical community. The provisions of this Paragraph shall survive expiration or other termination of this Agreement, regardless of the cause for such termination.
. . .
9. b. Except for disclosure to Group's legal counsel, accountant or financial advisors . . . neither Group nor any Physician shall disclose the terms of this Agreement to any person who is not a party or signatory to this Agreement, unless disclosure thereof is required by law or otherwise authorized by this Agreement or consented to by Hospital. Unauthorized disclosure of the terms of this Agreement shall be a material breach of this Agreement and shall provide Hospital with the option of pursuing remedies for breach or immediate termination of this Agreement. . . .
. . .
18. Group shall not assign or transfer, in whole or in part, this Agreement or any of Group's rights, duties or obligations under this Agreement without the prior written consent of Hospital, and any assignment or transfer by Group without such consent shall be null and void. . . . This Agreement is assignable by Hospital without consent, provided that Hospital provides written notice of the assignment.
None of the omitted provisions of this agreement would conceivably relate to the issue raised by plaintiff.
[2] We interpret his acceptance of risks to cover only the known risks from the use of anesthesia within the applicable standard of care. We do not recognize his acceptance as a relinquishment of anyone's liability for a claim for negligence in the impending administration of anesthesia to him.
[3] We share Judge Griffin's view that Judge Altenbernd's concurring opinion in Roessler v. Novak, 858 So.2d 1158, 1163 (Fla. 2d DCA 2003) (Altenbernd, J., concurring) (arguing that hospitals should be held to have a non-delegable duty to provide adequate radiology departments, pathology laboratories, emergency rooms, and other professional services necessary to the ordinary and usual functioning of the hospital), does indeed make sense as an aspiration for the evolution of Florida law.