PER CURIAM.
Michelle Kristensen-Kepler, as personal representative of the estate of her father, Erik Kristensen, appeals the final summary judgment entered in favor of appel-lee, Northpoint Surgery and Laser Center, in this medical malpractice action. We affirm, holding that Northpoint did not owe a duty to Kristensen with regard to the procedure performed by the physician he selected. Further, we hold that summary judgment was also appropriate on the issue of Northpoint’s apparent agency.
Northpoint is an ambulatory surgical center that provides facilities for out-patient elective surgical care pursuant to Chapter 395, Florida Statutes (2004). In the lawsuit filed below, appellant alleged that Dr. John F. Cooney, an anesthesiologist, negligently caused an infection in Kristensen’s spine while treating him at Northpoint for long-term back • pain. Among other claims, appellant asserted that Northpoint was liable for Cooney’s negligence, because it had a statutorily-created, non-delegable duty to provide Kristensen with non-negligent anesthesiology services under Wax v. Tenet Health System Hospitals, Inc., 955 So.2d 1, 11 (Fla. 4th DGA 2007) (on rehearing).
Northpoint moved for summary judgment contending it owed no duty to Kris-tensen under Wax. The circuit court granted Northpoint’s motion for summary judgment and appellant appealed,
We review the order granting summary final judgment de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Entry of summary judgment is proper “if the pleadings, depositions, answers to. interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fla. R. Civ. P. 1.510(c). As a rule, a court should consider summary judgment in a negligence case with caution. See Cheeks v. Dorsey, 846 So.2d 1169, 1171 (Fla. 4th DCA 2003). However, summary judgment is proper where it is established as a matter of law that the defendant owed the plaintiff no duty of care. See Wallace v. Dean, 3 So.3d 1035, 1046 (Fla.2009) (indicating that whether there is a duty of care “poses a question of law that the court must answer before permitting a negligence claim to proceed before the trier of fact.”).

Northpoint Owed Plaintiff No Duty of Care With Regard to the Physician Selected by the Patient

In Wax, the plaintiffs husband was admitted to the hospital for elective, outpa *520 tient surgery. 955 So.2d at 3. During the surgery, the patient died. Id. The complaint alleged medical negligence in the pre-surgical consultation and assessment of the patient, and in the administration and management of anesthesia for the procedure. Id. The complaint specifically alleged “that the hospital had a non-dele-gable duty to provide anesthesiology services,” making it directly liable for the negligence of the anesthesiologist. Id. at 6. We held that section 395.1055(l)(d), Florida Statutes (2005) and section 59A-3.2085(4) of the Florida Administrative Code of Regulations, which impose a “duty for non-negligent anesthesia services on all surgical hospitals,” created a non-dele-gable duty for the hospital to provide those services. Id. at 8-9.
We believe this imposition of a non-delegable duty under such circumstances makes sense. If a treating physician directs a patient to a hospital for a particular procedure, that patient has little, if any, control over who administers the anesthesia. The hospital has a statutory duty to provide that service. Therefore, the hospital bears a non-delegable duty to provide the service in a non-negligent manner. Wax did not hold, however, that a hospital likewise has a non-delegable duty to supervise the physician a patient has chosen to perform an elective procedure. It is this latter circumstance—the facts of this case—that make it distinguishable from Wax.
Here, the complaint alleges that the decedent’s injury was caused by Dr. Cooney’s negligent performance of the procedure, and Dr. Chaitoffs negligent post-surgical care. The patient chose Dr. Cooney to perform the procedure and Dr. Cooney directed the patient to Northpoint as the location where the procedure would be performed. The patient did not rely on Northpoint to select the doctor. Neither of the doctors was employed by North-point. Rather, the plaintiff has attempted to bootstrap the non-delegable duty of a hospital in Wax to every type of anesthesiology service, even those that are contracted for directly by the patient. North-point had no right to control or direct Dr. Cooney’s treatment of the patient, so it cannot be held liable for the doctor’s negligence.

Apparent Agency

As an alternative basis for reversing, appellant contends that summary judgment was also improper because a question of material fact exists as to whether Cooney was Northpoint’s apparent agent. See Stone v. Palms W. Hosp., 941 So.2d 514, 520 (Fla. 4th DCA 2006) (question of a physician’s apparent authority to act for a hospital is often a question of fact for the jury). To establish apparent authority, the plaintiff would have to show that: (1) Northpoint made a representation to the patient; (2) the patient relied on the representation; and (3) the patient changed his position as a result of that reliance. Id. at 519-20. Under the theory of apparent agency,
where it can be shown that a hospital, by its actions, has held out a particular physician as its agent and/or employee and that a patient has accepted treatment from that physician in the reasonable belief that it is being rendered in behalf of the hospital, then the hospital will be liable for the physician’s negligence.
Id. at 520 (quoting Irving v. Doctors Hosp. of Lake Worth, Inc., 415 So.2d 55, 59 (Fla. 4th DCA 1982))[1].
*521 Here, to establish an apparent agency, appellant relies heavily on a consent form thé patient signed after he had selected Dr. Cooney to perform the procedure. Nothing in the record suggests that the patient selected Dr. Cooney because of anything Northpoint did to influence that decision. The patient did not come to Northpoint seeking pain treatment; he went to Dr. Cooney. Northpoint did not pay salaries to the doctors. The doctors did not have offices at Northpoint. There were no signs posted stating that the doctors were agents, employees, or servants of Northpoint. Northpoint made no representation to the patient that the doctors were its agents. The patient did not rely on Northpoint’s reputation for the treatment of pain in choosing Dr. Cooney. In short, there was no genuine issue of material fact concerning an apparent agency theory of liability.
The fact that Northpoint’s consent form disclosed that Dr. Cooney had a financial relationship with Northpoint does not inject apparent authority liability into this case. Nor does the consent form authorizing Dr. Cooney to designate assistants to perform the procedure, including those from Northpoint, morph consent into an apparent agency relationship. As the trial judge correctly noted at the hearing, if anything, it was more apparent that Northpoint operated under the direction of the doctors,[2] not the other way around.
We have considered the remaining arguments raised by appellant, but find that they do not justify reversal. For these reasons we affirm the final summary judgment and remand to the circuit court for further proceedings.
GROSS, C.J., MAY and CIKLIN, JJ., concur.

. We generally agree with Judge Altenbernd's concurrence in Roessler v. Novak, 858 So.2d *521 1158, 1163 (Fla. 2d DCA 2003), that "the use of apparent agency as a doctrine to determine a hospital’s vicarious liability for the acts of various independent contractors has been a failure.”

. At the hearing on the motion for summary judgment, plaintiff’s counsel argued that the doctors were the apparent agents of North-point because Dr. Chaitoff directed the patient to obtain a prescription from Northpoint rather than from his office. The trial court responded: "But [aren't] the facts that you're showing me or attempting to set forth, doesn't that [indicate] ... [n]ot that the doctor was an agent of Northpoint, but just the opposite. If anything, just the opposite.”